[Civ. No. 14396.   First Dist., Div. One.    Sept. 5, 1950.]

IVAN B. HOBSON, Appellant, v. MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION, INC., Respondent.

Robert E. Nisbet for Appellant.

Horace T. Beverly and Leonard S. Lurie for Respondent.

Fred N. Howser, Attorney General, T. A. Westphal, Jr., Deputy Attorney General, Harold B. Haas, Deputy Attorney General, for Wallace K. Downey, Amici Curiae on behalf of State Insurance Commissioner.

BRAY, J.—In an action upon a health and accident insurance policy issued by defendant to plaintiff and tried before a jury, the jury found in favor of plaintiff in the sum of $3,730. Plaintiff appealed, on the ground that the amount awarded was less than he was entitled to under the terms of the policy.

## Questions Presented

Were the terms of the policy ambiguous and hence extrinsic evidence should have been admitted to interpret them, and if not, was the court's interpretation correct?

## Facts

The facts are not disputed. On December 2, 1941, defendant issued plaintiff, who was then 53 years of age, a "Lifetime Income Protection Policy" which provided "Benefits for Loss of Life, Limb, Sight or Time, by Accidental Means, or Loss of Time by Sickness as Herein Limited and Provided." Its terms as they affect this litigation will be set forth hereafter. In December, 1942, plaintiff was injured. The jury found that plaintiff "was wholly and continuously disabled by bodily injuries resulting directly and independently of all other causes and through purely accidental means from December 23, 1944, to and including May 22, 1949." This finding is not challenged. Plaintiff became 56 years of age on September 18, 1944. Defendant paid plaintiff $100 per month from the date of the accident until December, 1944, and then stopped payment. The record is not clear as to whether this was because defendant believed plaintiff had fully recovered, or because plaintiff would not accept payments at a reduced monthly sum. This action was then brought. At the trial defendant took the position, as it does now, that the policy provided that when the insured became 56 years of age the monthly payments were reduced 10 per cent each year until the insured should become 60, and thereafter would be $50 per month. Plaintiff's position was and is (1) that the policy provides for payment of $100 per month without reduction; (2) that if the policy is construed as contended by defendant, then the policy is repugnant to the California Insurance Code; and (3) that at worst, the policy is ambiguous and therefore the court erred in refusing to permit plaintiff to introduce parol evidence to explain the ambiguity. The trial court took the position that the policy was not ambiguous, construed it in accordance with defendant's contention, and so instructed the jury. The amount awarded by the jury was in accordance with this construction.

## Terms of Policy

The terms relevant here follow: The association "Does Hereby Insure Ivan B. Hobson . . . against loss of life, limb, sight or time, resulting directly and independently of all

other causes, from bodily injuries sustained during any term of this Policy, through purely Accidental Means (Suicide, sane or insane, is not covered), and against loss of time beginning while this Policy is in force and resulting from disease contracted during any term of this Policy, respectively, subject, however, to all the provisions and limitations hereinafter contained." After the words "Does Hereby Insure," on either side of the policy appears in large type the following:

"Monthly Benefits $100.00    Death Benefit $2,500
"Maximum    Maximum
  Monthly Benefits $200.00    Death Benefit $5,000"

On the top of page 2, is part D, a crucial clause in this case. The clause reads:

"Part D.  Total Accident Disability Benefits For Life

"If such injuries, as described in the Insuring Clause, do not result in any of the above mentioned specific losses but shall wholly and continuously disable the Insured for one day or more, the Association will pay a monthly indemnity at the rate of One Hundred ($100.00) Dollars per month so long as the Insured lives and suffers said total loss of time."

On the third page, under the heading "Additional Provisions" appears the following: "(c) The term of this policy begins at 12 o'clock noon, Standard Time, on date of issue to the Insured against accident and on the thirty-first day thereafter against disease and ends at 12 o'clock noon on date any renewal is due. *No reduction in the benefits of this policy shall be made during the lifetime of the Insured on account of age except in Parts D and K which shall be reduced ten per cent when the Insured is or becomes fifty-six years of age, with further reduction of an equal amount effective with each additional attained year of age to and including age sixty."* The italicized portion of this clause is in heavier type than the first sentence.

### Interpretation

The basic question is the effect of this last clause (which for convenience will be called "the reduction clause") on "Part D" which provides for indemnity at $100 per month *for life.* The trial court was correct in its finding that the policy did not require parol evidence for its interpretation, and therefore, that such evidence was inadmissible. However, the court was in error in its construction of the disputed clause. It held that additional provision (c) modified part D, so that when

an insured who had been injured prior to his attaining age 56, reached that age, the $100 monthly payments would be reduced to $90; at age 57 they would be reduced to $80, and so on until from age 60 on they would be $50.

In construing an insurance policy it must be borne in mind that where two constructions are reasonable, that which is more favorable to the insured should be adopted. (*Frenzer* v. *Mutual Ben. H. & A. Assn.*, 27 Cal.App.2d 406, 416 [81 P.2d 197]; *Island* v. *Fireman's Fund Indemnity Co.*, 30 Cal. 2d 541, 548 [184 P.2d 153, 173 A.L.R. 896]; 14 Cal.Jur. 443; *Norton* v. *Farmers A. Inter-Ins. Exch.*, 40 Cal.App.2d 556, 566 [105 P.2d 136].)

The policy should be read as a layman would read it and not as an attorney or an insurance expert might read it.

From an examination of the policy it is obvious that a layman would reasonably conclude that it provided that were he less than 56 years of age at the time of injury, he would receive $100 per month as long as he lived and was wholly and continuously disabled. Were he 56 years of age when injured, he would receive $90 per month as long as the disability continued; were he 57 years of age when injured he would receive $80 per month for such period, and were he 60 years of age or older at the time of injury, he would receive $50 per month for such period.

A layman reading the policy would first be struck with the statement on the first page of the policy, in bold type and large figures, "Monthly Benefits $100.00 Maximum Monthly Benefits $200.00." Then in large letters at the top of page 2 he would see "Part D. Total Accident Disability Benefits For Life" followed by the paragraph stating that he would be paid "a monthly indemnity at the rate of One Hundred ($100.00) Dollars per month so long as the Insured lives and suffers said total loss of time." In view of these eye-catching positive statements, his interpretation of the reduction clause would undoubtedly be as we have above set forth.

Cases like *Taff* v. *Atlas Assur. Co.*, 58 Cal.App.2d 696 [137 P.2d 483], and *Kahn* v. *Royal Indemnity Co.*, 39 Cal.App. 180 [178 P. 331], cited by defendant, which hold that an assured is bound by the terms of the policy he accepts and cannot complain that he did not read the policy, are not in point. This is not a case of the policy not being read, but one of the interpretation a person reading the policy would reasonably give it.

If the court's interpretation of the policy were correct,

then additional provision (c) is repugnant to part D, and under well established principles of insurance law must be disregarded. Part D clearly states that the indemnity to be paid is $100 per month as long as the insured lives, and the disability continues. There is nothing in part D or the insuring clause or clauses that modifies this statement in any way.

The language in *Frenzer* v. *Mutual Ben. H. & A. Assn.,* *supra* (27 Cal.App.2d 406), applies here. There the court was discussing the repugnancy of part K of that policy to part A. Of part A the court said (p. 415) : "It purports to be a complete method of dealing with the specific losses there mentioned. It does not refer to Part K or to any portion of the policy for clarification." Substitute part D and additional provisions (c) of our policy for part A and part K, and the quotation fits exactly.

If additional provision (c) attempts to modify this positive statement it is repugnant to it. That the clauses are repugnant to each other is well shown by the case of *Boillot* v. *Income Guaranty Co.,* 231 Mo.App. 531 [102 S.W.2d 132]. In that case the contract in part B called for a monthly indemnity "at the rate of the monthly indemnity hereinbefore specified for the period of such continuous total disability." (P. 144 [S.W.2d].) Additional provision N contained a reduction clause. The court said (p. 145 [S.W.2d]) : "The latter clause of additional provision N whereby it undertakes to reduce the amount of such monthly indemnities from $100 to $66.66⅔ per month is clearly repugnant to the provisions of part B of the policy, which precedes it and fixes the amount of the monthly indemnity at $100. By part B, the agreement to pay is unequivocal, as likewise is the amount agreed to be paid monthly. . . . The latter clause of additional provision N, under such circumstances, cannot stand. Under such circumstances, part B governs." The Boillot case is an answer to defendant's contention that the use of the words "as Herein Limited and Provided" in the caption of the policy in question here, as well as "subject, however, to all the provisions and limitations hereinafter contained" set forth in the insuring provision on the first page of our policy, ties in additional provision (c) to part D. In the Boillot case the policy used the language. that it provided indemnity for loss of time by accidental means "to the extent herein provided" (p. 144 [S.W.2d]) and insured plaintiff "subject to all the provisions and limitations thereinafter contained in the policy" (p. 144

S.W.2d] ). Nevertheless, the court there held that the reduction clause could not stand.

There are three legal principles which apply to this situation: (1) Where two clauses of an agreement are repugnant, "the first shall be received and the latter rejected." (12 Am. Jur. 778, § 243; *Burns* v. *Peters*, 5 Cal.2d 619 [55 P.2d 1182].) (2) That clause "which affords the most protection to the insured will control and be given effect." (1 Couch, Cyclopedia of Insurance Law, 369; *Frenzer* v. *Mutual Ben. H. & A. Assn., supra* [27 Cal.App.2d 406].) (3) ". . . a proviso which is utterly repugnant to the body of the contract and irreconcilable with it will be rejected; likewise a subsequent clause irreconcilable with a former clause and repugnant to the general purpose and intent of the contract will be set aside." (*Jones* v. *Pennsylvania Casualty Co.* 140 N.C. 262 [52 S.E. 578, 5 L.R.A.N.S. 932, 111 Am.St.Rep. 843].)

Defendant relies on language in *Security T. & S. Bk.* v. *New York Indem. Co.*, 220 Cal. 372 [31 P.2d 365], which supports his position that the additional provision should be given full effect. The essential facts in that case were that plaintiff bank brought an action on an indemnity bond against the indemnity company to recover on a loan which it had made on the basis of forged documents. Insuring clause B of the policy covered any losses of property through theft. Section 2 (a), a later provision in the policy, provided that the bond did not cover "Any loss effected directly or indirectly by means of forgery. . . ." The Supreme Court found that theft was present, but reversed a judgment in favor of plaintiff, basing its reversal on section 2 (a). The court said (p. 377): "We are unable to subscribe to the reasoning which suggests that because the general coverage clause 'B' insures against all thefts, the exception or limitation clauses excluding losses resulting from forgery or growing out of a loan, must be so construed as to exclude such losses only when there is an absence of the elements of theft. To so interpret the bond would be novel, to say the least, and would serve to nullify the exception or limitation clauses in important particulars. The very purpose of exception or limitation clauses is to exclude risks otherwise covered by general coverage clauses." It does not appear whether the makeup of the policy there was such as here as to give an impression that the coverage was unlimited. However, life insurance policies are different than indemnity bonds. The latter are given generally to business men who are

trained and accustomed to read and consider all their provisions, whereas insurance policies are sold to the general public who are not so trained, and who are more likely to consider only the obvious provisions. The rule applicable to insurance policies is well stated in *State ex rel. Mills Lumber Co.* v. *Trimble,* 327 Mo. 899, 908 [39 S.W.2d 355] (quoting from *Mathews* v. *Modern Woodmen,* 236 Mo. 326, 343-344 [139 S.W. 151, Ann. Cas. 1912D 483]) : " 'Policies are contracts, elaborately and shrewdly prepared in advance by calculating and astute experts. They are tendered, ready-made, to and accepted out of hand by plain people, the uninformed and unlearned, the unwary and confiding. Insurance policies swarm with intricate technical provisions, stipulations, exceptions, conditions, provisos, limitations, hedging liability about and looking to its avoidance. It is not singular then that courts incline to pit judicial astuteness against the astuteness of the policy-maker, the latter planting forfeitures in ambush or open, and the former striving to avoid them.' "

In view of our holding that the above is a reasonable interpretation of the provisions of the policy as they appear upon its face, it becomes unnecessary to consider the contentions of plaintiff and of the attorney general raised in the amicus curiae brief, as to whether the form of the policy, that is, the sizes of the type and the physical relationship of the various paragraphs, complies with the Insurance Code and the rules of the Insurance Commissioner. If the insured had been 56 years of age or over when injured, these matters would become important on the question of whether the reduction clause would be illegal, but are not necessary to be determined here.

The judgment is reversed. Inasmuch as defendant has not appealed from the judgment based upon the verdict to the effect that plaintiff was wholly disabled through accidental means for the period from December 23, 1944, to May 22, 1949, the trial court is instructed to enter judgment in favor of plaintiff in the sum of $100 per month for the said period of disability, together with interest and costs.

Peters, P. J., and Wood (Fred B.), J., concurred.