**GENERAL CASUALTY COMPANY OF AMERICA, a corporation, Appellant,**

v.

**AZTECA FILMS, INC., a corporation, Appellee.**

**No. 16193.**

United States Court of Appeals
Ninth Circuit.

April 5, 1960.

Rehearing Denied June 1, 1960.

162

Gene E. Groff, Los Angeles, Cal., for appellant.

Moss, Lyon & Dunn, Sidney A. Moss, Henry F. Walker, Los Angeles, Cal., Edwin Tobolowsky, Goldberg, Fonville, Gump & Strauss, Dallas, Tex., for appellee.

Before STEPHENS and HAMLIN, Circuit Judges, and LINDBERG, District Judge.

LINDBERG, District Judge.

This is an appeal from a judgment in favor of the defendant, Azteca Films, Inc., a corporation, hereinafter Azteca, in an action brought by General Casualty Company of America, a corporation, hereinafter General, seeking declaratory relief. Jurisdiction in the district court was based upon diversity of citizenship under the provisions of 28 U.S.C.A. § 1332 and jurisdiction of this court upon appeal is under 28 U.S.C.A. § 1291.

By bringing the action General sought exoneration of liability to Azteca under an exclusionary clause of its blanket liability policy of insurance with the latter. Azteca counterclaimed, seeking judgment for the face amount of the policy, together with necessary expenses incurred in defending the claims which underlie the dispute here involved.

The policy of insurance involved covered the period from July 22, 1953 to July 22, 1954. It included coverage as to property damage liability to the extent of $100,000, together with the obligation of the insurer to defend in the name of and on behalf of the insured any suit against the insured seeking damages for injury to or destruction of property. It was stipulated and conceded that the

property damage resulting from the fire, hereinafter referred to, is within the coverage of said policy unless excluded therefrom by reason of the following language of the "Products and Completed Works Exclusion" attached to and a part of said insurance policy:

"Products and Completed Works Exclusion (BLP or FL only—Excludes business and professional products and completed works 'OFF' premises of insured)

"In consideration of the premium at which this policy is written, it is agreed this policy does not apply to liability, claims or expense arising out of:

"(1) the consumption, handling or use of or the existence of any condition in, any article or product manufactured, sold, handled or distributed by the insured, after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured, except equipment or other property rented to or located for the use of others but not sold;"

The policy was executed in the State of California, and it is agreed that the laws of the State of California control in the construction of the policy.

Azteca was in the business of distributing motion picture films to various theaters where they would be exhibited and then returned to Azteca. Film wears out with use and deteriorates with age, and upon the return of each film the same would be inspected by the insured and, if possible, renovated for reuse and further distribution. Film that could not be reused became "junk film." Bits that might be cut out of an otherwise good film became "scrap film."

Seeking a place to dispose of discarded scrap and junk film, the insured in 1947 contacted American Cellulose Company of Indianapolis, Indiana, and arrangements were made whereby the latter furnished drums (which remained at all times the property of American Cellulose) to the insured in which to place the discarded scrap and junk film and which, when filled, were shipped by common carrier to and at the expense of American Cellulose Company. Upon arrival at American Cellulose the contents of the drum or drums would be inspected and segregated into that which could be used by American Cellulose and that which was useless. The useless was then destroyed and the useful would be weighed and payment, based on said weight and according to the current market, would be made to Azteca.

Included in the shipments of junk and scrap film there might be small amounts of acetate, i. e. "safety", film as well as nitro-cellulose, i. e. "non-safety", film. The film shipped might include both colored and black and white film. Some of the non-safety film would be in various stages of deterioration. Of all this only black and white, non-safety film relatively undeteriorated could be used and would be paid for by American Cellulose. It is significant to note that during all the years this arrangement was in effect film which was useless to American Cellulose was always destroyed and never returned to Azteca. No shipment was ever refused by American and no payment was ever questioned or refused by Azteca.

Pursuant to this arrangement five empty drums were shipped to a branch of Azteca at San Antonio, Texas, in November of 1953. Approximately eight months later four of the drums had been filled with discarded scrap and junk film. The drums were sealed by Azteca, were addressed by it to American Cellulose and, on July 14, 1954, were shipped pursuant to uniform straight bill of lading, non-negotiable, to the consignee, American Cellulose, via Sunset Motor Lines, a common carrier, who picked up the drums and transported them to its shipping warehouse in Dallas, Texas, where they were placed on a loading platform. From there they were to be transshipped by connecting carriers to American Cellulose.

Non-safety or nitro-cellulose film is highly flammable and subject to spontaneous combustion. While the drums

were on Sunset's loading platform in Dallas on July 15, 1954 fire developed in one or more of the drums as a result of spontaneous combustion and, as a consequence thereof, the drums of film, the loading platform and the surrounding buildings and their contents were destroyed by fire.

Several lawsuits were brought against Azteca for damages caused by the fire. General was timely tendered with the defense of these actions but declined on the ground that the liability was without the coverage of the policy based on the aforementioned exclusionary clause.

Azteca then hired counsel for the defense of said lawsuits and thereafter settlement was reached with respect to all claims. The amount of the settlement exceeded the limits of the policy although it was conceded that it was reasonable and prudent and that the hiring of counsel and the expense incurred were also necessary and reasonable. The only issue presented was whether the claims which arose were within the Products and Completed Works Exclusion clause.

The question was decided by the trial court upon the assumption that the phrase "after the insured has relinquished possession thereof to others," appearing in the exclusion clause contained an ambiguity by virtue of the word "possession." [1] Resolving this ambiguity against the insurer, the court concluded that "possession" was intended and understood to mean "legal" or "constructive" possession.

If the quoted phrase means giving up "actual possession" there would be no liability upon General for it is abundantly clear that the claims arose out of

(1) the existence of a condition in [2]

---

1. In the trial court's opinion the following reference to the word "possession" is made:

"If 'possession' means actual possession, then the defendant at the time of the fire did not have actual possession of the film in question. But if the term 'possession' also includes constructive possession, then defendant could have had possession if the film was in the hands of its agent.

"'Possession' is a word which has several meanings. The United States Supreme Court in National Safe Deposit Co. v. Stead, 232 U.S. 58, said, at page 67 [34 S.Ct. 209, 58 L.Ed. 504]:

"'* * * there is no word more ambiguous in its meaning than possession.'

"There is a difference between possession and 'legal' possession. In Canadian Radium & Uranium Corp. v. Indemnity Ins. Co., 348 Ill.App. 171, 108 N.E.2d 515, the court said (quoting from a cited case):

"'"We consider a fair interpretation of this alienation clause to be that the term 'possession' is used in its limited legal sense. From that conclusion it follows that there was no change in possession, because legal possession follows the legal title * * *"'

"If the foregoing states the rule correctly, there was no alienation of possession, because Azteca still retained legal possession for there had been no sale of the film at the time of the fire. The

film was placed in drums, sealed and delivered to the common carrier for transportation to Indianapolis. Sale was not to be consummated until the arrival of the film, inspection by the purchaser, and a determination of the amount of film in the containers which would be accepted."

2. Stipulation IX of Stipulations dated February 24, 1958, (page 28 of the printed record) reads:

"That nitro-cellulose films are highly combustible and subject to spontaneous combustion * * *"

Also, the following colloquy took place between the court and counsel (pages 10 and 11 of Reporter's Transcript of Proceedings):

"The Court: Is there any evidence at all as to how the fire started? All you know is the fire started.

"Mr. Groff: That is correct.

"The Court: Inside the drums.

"Mr. Groff: Yes.

"The Court: You haven't got any evidence that anybody left a match in the drums?

"Mr. Groff: Counsel has stated he doesn't so contend, your Honor, I believe.

"The Court: You don't contend anybody left anything in the drums lighted in any way?

"Mr. Groff: The evidence will show that there was nothing in the drums except the film.

"The Court: I don't know what difference it would make. *I can't see what*

(2) an article handled by the insured [3]

(3) after the insured had relinquished "actual possession" thereof to others, and

(4) away from the premises owned, rented or controlled by the insured.

On the other hand, if the phrase is to be construed broadly so as to include "constructive possession" or "possession in law" the issue could hinge on whether or not there had been a completed sale of the film. Appellant devoted its efforts below largely to proving or attempting to prove that there had been a completed sale. However, the court found otherwise and inasmuch as constructive possession follows title, which remained in Azteca according to the trial court's finding, and since the word "possession" was interpreted by the trial court to mean "constructive possession" the exclusionary clause was found to be inapplicable and judgment was entered in favor of Azteca upon its counterclaim.

General in its appeal breaks its argument into four parts. The first three deal with the question of passage of title while the fourth urges that irrespective of whether or not there had been a completed sale Azteca had relinquished possession as contemplated by the endorsement. If General should be sustained on its fourth contention the question of whether there was a completed sale will become immaterial. We, therefore, examine the fourth contention first.

■ The first aspect of the question to be considered is whether the clause under examination—because of the word "possession"—is ambiguous. If it is, the familiar rules of strict construction against an insurer will become applicable. But any ambiguity must be real before the court is justified in invoking the rule. It is ambiguity and not awkwardness of language which opens the door for construction.

■ Appellee cites many cases to the effect that the word "possession" is ambiguous. It was stated in National Safe Deposit Co. v. Illinois, 232 U.S. 58, 67, 34 S.Ct. 209, 212, 58 L.Ed. 504, that "both in common speech and in legal terminology, there is no word more ambiguous in its meaning than possession." There the word had been used in a statute. Other cases have quoted the language used by the Supreme Court. Bennett Chevrolet Co. v. Bankers & Shippers Ins. Co., 58 R.I. 16, 190 A. 863, 864, 109 A.L.R. 1077, quotes the above language and goes on to say that the use of the word possession "in any insurance

---

*difference it would make if we agree that the fire probably started by spontaneous combustion.*

"Mr. Groff: That is perfectly all right with me, your Honor.

"Mr. Moss: *We can't deny it, your Honor.*

"The Court: All right.

   *     *     *     *     *

"The Court: *I was just trying to ascertain whether or not there was any issue here about how the fire started, and evidently there isn't any issue here.*

"Mr. Moss: No, sir." (Emphasis supplied.)

The trial court in its opinion, after reviewing certain of the evidence, made the finding which is undisputed: "The fire must have been the result of spontaneous combustion." (Page 5, lines 28 and 29.)

3. Appellee also advances the argument that appellant, to avoid liability under the policy, must prove that the liability arose out of the "handling" of the film by someone other than Azteca after Azteca relinquished possession. There is no merit to this contention for the reason that the clause provides for exclusion from liability arising out of the consumption, handling or use of or the existence of any condition in the article in the alternative. The disjunctive is used and cannot be ignored. If the claims arose out of a condition existing in the film after Azteca relinquished possession it is immaterial whether or not the film was being handled at the time of the fire or explosion.

Appellee also urges that appellant must further prove that the condition existing in the article came into existence only after the insured had relinquished possession thereof to others. The clause does not say that. If the claims arose out of a condition existing in the article it is quite immaterial just when the condition arose. Appellee's interpretation would render the insurer's liability coextensive with the insured's. The purpose of an exclusion clause is quite the opposite.

policy unaccompanied by explanatory words to make clear the sense in which it is employed would seem to be hazardous." Appellee cites and the court below relied upon Canadian Radium & Uranium Corp. v. Indemnity Insurance Co., 348 Ill.App. 171, 108 N.E.2d 515, 517, as a case involving an exclusionary clause not unlike the clause under examination. Appellee suggests that the decision there rested upon the meaning of the word "possession." The Illinois Court did say:

"The term 'possession,' used in the policy, in our judgment means legal possession, unless the contrary appears from the language in the policy."

But more significantly the court found an agency relationship between the insured and those having actual possession of the property. The court concluded:

"Therefore, Radium Industries' possession of the instrumentalities which caused the injuries in question, under such agency, must be deemed the possession of plaintiff and could not, under such circumstances, be considered a relinquishment of possession by the insured within the meaning of the exclusion provision."

It would seem to this court that such a solution to the problem would follow irrespective of the interpretation given to the word "possession." Possession in fact by an agent, all aspects of agency being satisfied, constitutes actual possession by his principal as distinguished from theoretical or constructive possession.[4]

While it is suggested that the exclusionary clause involved in Canadian

4. The trial court below, while not making a finding that Sunset Motor Lines was the agent of Azteca, did state in his opinion: "There is no evidence before the Court to indicate American Cellulose Company designated Sunset Motor Lines as the carrier to be used. Consequently, when the film in question was delivered to Sunset Motors for shipment, it could be found that Sunset Motor Lines was the agent of Azteca." (Page 5, line 31.) As we view the evidence it appears that no such finding could be made. Rather, it would appear that Azteca was acting on behalf of American Cellulose in calling Sunset Motor Lines to pick up the drums containing the junk film for delivery to American Cellulose. While the drum loan memorandum (Exhibit 3) issued by American Cellulose Company to Azteca indicates the drums were shipped via Consolidated Forwarding Company to Azteca and provides under the caption "Remarks" the following:
"Ship Promptly By: Consolidated Forwarding Company
When Filled To:
American Cellulose Company
Pendelton Pike at Kingman Drive
Indianapolis, Indiana"
it appears from the testimony of Jewell Truex, Manager of the San Antonio Branch of Azteca, that Consolidated Forwarding Company was the carrier in and out of Indianapolis, that it did not operate in or out of San Antonio and further that similar shipments in the past originating with Sunset Motor Lines had been accepted and paid for by American Cellulose. The following testimony of Mr. Truex is pertinent on this issue, page 60 of Transcript of Record:
"Q. (By Mr. Groff): Mr. Truex, American Cellulose furnished to you certain drums over this period of time that you were manager for the purpose of shipping the film to American Cellulose, didn't they? A. Yes, they did.
"Q. In each instance they furnished the drums to you they also forwarded to you a drum loan memorandum, didn't they? A. Yes.
"Q. I show you T for identification and ask you if that document, other than for the written matter in there, is not the form of document that was sent whenever drums were sent to you? A. Yes.
"Q. Is that correct? A. Yes, it is the form.
"Q. And this particular document, T, is that not a document that was sent to you in connection with the drums that were sent that were eventually involved in the fire in Dallas? A. Yes, it is.
  *      *      *      *      *
"Q. Now, I call your attention to the Exhibit T for identification, which is in front of you, and I note that it shows, 'Ship promptly by: Consolidated Forwarding Company when filled,' and so forth.
"In connection with the other drum memorandums that were furnished to you, American Cellulose had on other occasions directed the carrier that you were to use to return the filled drums,

Radium is like the exclusionary clause involved here, a close examination discloses a very important difference. The clause in Canadian Radium concludes thusly: "after the insured has relinquished possession thereof to others, anything contained in the printed conditions of this policy to the contrary notwithstanding." The clause involved here contains additional language and reads as follows: "after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured, *except equipment rented to or located for the use of others but not sold.*" (Emphasis supplied.) As will appear later the italicized portion of the clause here involved performs an important function in the interpretation of the word "possession."

Doubtless the word "possession" standing alone often may be an ambiguous term. Courts give to the term varying shades of meaning. When called upon to construe the word in a statute or in a pleading courts will generally give to it a legal or technical meaning. When found in a contract courts make every attempt to give to it the meaning understood by the parties when entering into the contract. This is not always easy, but the problem doesn't even exist if the word, in its context, is not susceptible of two meanings. The question is not whether a word is ever ambiguous, but rather when is a word ambiguous?

Ambiguity is not necessarily to be found in the fact that a word or phrase isolated from its context is susceptible of more than one meaning. As expressed by the Seventh Circuit in Hill v. Standard Mut. Casualty Co., 110 F.2d 1001, 1004:

"To find that a word or phrase isolated from its context is susceptible to more than one meaning, or that a word or phrase in its context is susceptible to one reasonable and one unreasonable meaning, does not spell ambiguity."

Even in the case of Canadian Radium & Uranium Corp. v. Indemnity Ins. Co., supra, relied upon by appellee, the court stated that in its judgment the term "possession" meant legal possession "unless the contrary appears from the language of the policy."

All rules of construction are subordinate to the leading principle that the intention of the parties, to be collected from the entire instrument, must prevail, unless inconsistent with some rule of law. Chesapeake & Ohio Canal Co. v. Hill, 15 Wall. 94, 82 U.S. 94, 21 L.Ed. 64. The test to be applied by the court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean. Trousdell v. Equitable Life Assur.

hadn't they? A. Yes. They usually specified a common carrier on the—

"The Court: Just a minute. You mean to say when you got the empty drums they specified what carrier you were to use in sending the full drums back?

"The Witness: Yes. They usually named a carrier.

"Q. (By Mr. Groff): You made inquiry in connection with previous shipments prior to July 14, 1954, and found out that the carrier that they had designated was the ultimate carrier going into Indianapolis, and sometimes they didn't even come into Texas, that is true, isn't it? A. I assume they were the ultimate carrier in Indianapolis, because we did not have out of San Antonio the carrier which they specified.

"Q. Now, there were previous instances where they had specified carriers

that didn't operate out of San Antonio and you shipped by Sunset, didn't you? A. Yes.

"Q. And when these drums that were previously shipped arrived at American Cellulose in Indianapolis, they were accepted and you were paid for the nitrocellulose films that were in them, weren't you? A. Yes.

"Mr. Groff: May I offer this, your Honor?

"The Court: It may be received in evidence as Plaintiff's Exhibit 3."

In light of the foregoing undisputed evidence it would appear that if the carrier, Sunset Motor Lines, was the agent of either it was the agent of the buyer, American Cellulose. See 13 C.J.S. Carriers § 148, p. 291.

Soc. of United States, 55 Cal.App.2d 74, 130 P.2d 173, 990; New York Life Ins. Co. v. Hiatt, 9 Cir., 140 F.2d 752, 168 A.L.R. 551. In other words, the criterion is ambiguity from the standpoint of a layman, not from that of a lawyer. Where it is possible to adopt a construction which is favorable to the insured without doing violence to the policy wording that construction will be preferred. This anticipates a reasonable interpretation of the language and can apply only so far as the fair application of the ordinary meaning of language permits. But this rule of strict construction against the insurer cannot apply unless there is some reasonable basis for doubt. Couch on Insurance 2d states:

> " 'Usual and ordinary meaning' has been stated variously to be that meaning which the particular language conveys to the popular mind, to most people, to the average, ordinary, normal man, to a reasonable man, to persons with usual and ordinary understanding, to a businessman, or to a layman." Couch on Insurance 2d § 15:18, (citing among other cases the California case of Hobson v. Mutual Benefit Health & Accident Assoc., 99 Cal.App.2d 330, 221 P.2d 761.)

■ Applying these rules to the instant exclusionary clause, it would seem that the word "possession" as here used would convey to the ordinary mind, the layman, the idea of actual possession. The concept of constructive possession is the sort of concept that would more likely occur to a lawyer. Here the film had been sealed in American Cellulose's drum; it had been shipped pursuant to a uniform bill of lading consigned to the latter and at the expense of the latter; it had been delivered into the hands of a common carrier; its journey had been partially completed; whether or not the film would be usable by American for its purposes was a determination to be made exclusively by the buyer; if not usable it would be destroyed, it would not be returned to Azteca. Azteca would not be asked whether or not the useless film should be destroyed. It was always destroyed as a matter of course, if not usable. Azteca shipped the film knowing this is what would happen. If this does not amount to relinquishment of possession, as the term would be understood by a layman, it is difficult to conceive what additional facts and circumstances would be required. Assume arguendo that Azteca had disposed of its junk and scrap film by abandoning it upon some refuse pile upon premises owned, rented or controlled by others. Clearly this would be a relinquishment of possession to others, although no sale would be involved. But as to the unmarketable film that is in effect what Azteca did in the instant case.

■ There is yet another reason why the word "possession" as used here should not be construed to mean "constructive possession." Under California law where a written agreement attempts to cover all relationships of the contracting parties, interpretation to be given the contract is determined, as a matter of law, solely from the instrument itself, if possible, *without making any part of the instrument nugatory*, or without reaching an absurdity, and the appellate court is free to adopt its own construction. Republic Pictures Corp. v. Rogers, 9 Cir., 213 F.2d 662, certiorari denied 348 U.S. 858, 75 S.Ct. 83, 99 L.Ed. 676; also, see Calif. Civil Code, §§ 1638, 1639 and 1641. Looking again to the entire exclusionary clause here involved it will be noted that while the clause removes certain situations from coverage, there is an exception to the exclusion; i. e., "except equipment or other property rented to or located for the use of others but not sold." The interpretation of the word "possession" urged by the appellee and found by the court below actually renders the above-quoted portion of the exclusionary clause nugatory if not absurd, for if the exclusion must relate to property "sold" and off the premises, it is completely unnecessary to except therefrom property rented to or located for the use of others but not sold. Para-

phrasing the clause in this light and eliminating words having no application, it would read:

"It is agreed that this policy does not apply to liability or claims arising out of the existence of any condition in any article handled by the insured, after the insured has relinquished 'title thereto (or sold)' to others and away from premises of the insured, except property rented to or located for the use of others but not sold."

As so read there would be an exclusion from coverage with respect to property that has been sold and off the premises, but the exclusion would not apply to certain property not sold, though off the premises. Such an exception would be redundant and entirely meaningless.

What the clause does say, and about this there can be no ambiguity, is that there is a kind of unsold property that does not come within the exclusion. This leaves the inescapable implication that certain other unsold property does come within the exclusion. This is entirely consistent with the interpretation of the word "possession" to mean actual possession and inconsistent with constructive possession.[5] As stated in 1 Couch on Insurance 2d § 15:43:

"A construction of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all of its provisions and is consistent with the general intent."

It seems to us that the conclusion reached below actually requires straining. It is too technical from a layman's point of view. Reaching a strained inter-

pretation of a contract is tantamount to rewriting the contract. This the court cannot do. See Long v. West Coast Life Ins. Co., 16 Cal.2d 19, 104 P.2d 646.

We conclude, therefore, that the word "possession" was intended to mean "actual possession" and was not intended to mean "constructive possession." It appearing without dispute that actual possession had been relinquished, it must follow that the losses here involved were within the exclusionary clause exonerating General from liability therefor.

The judgment is reversed and the case is remanded with instructions to enter judgment for appellant.

---

5. In attempting to ascertain the general intent of the exclusionary clause here involved it is helpful to notice its title. The caption of a rider should be read and construed with the language of the rider itself. Coit v. Jefferson Standard Life Ins. Co., 28 Cal.2d 1, 168 P.2d 163, 168 A.L.R. 673. The caption here reads:

"Products and Completed Works Exclusion
(BLP or FL only—Excludes business

and professional products and completed works 'OFF' premises of insured)"

When this caption, and particularly the word "off" is kept in mind as the clause itself is read the conclusion that we reach that the word "possession" as therein used means "actual possession" is even more inescapable.