**PRUDENTIAL INSURANCE COMPANY OF AMERICA, a Corporation, Appellant,**

v.

**Jean Lee BARNES, Appellee.**

No. 16788.

United States Court of Appeals
Ninth Circuit.

Dec. 21, 1960.

Fennemore, Craig, Allen & McClennen, Phoenix, Ariz., for appellant.

Richmond & Ajamie, Phoenix, Ariz., for appellee.

Before ORR, MERRILL and KOELSCH, Circuit Judges.

ORR, Circuit Judge.

Pursuant to progress and changed conditions Arizona law enforcement officials, in common with law enforcement officials of other Western states, have moved from the pursuit of cattle rustlers on horseback to the pursuit of car thieves and other criminals who employ the fast moving automobile by the use of airplanes.

On the fifth day of October, 1957, the Sheriff's Office of Maricopa County, Arizona, had an airplane at its disposal. The Sheriff caused to be instituted a search for a "get away" car which had been used in a recent bank holdup and also a search for a stolen truck. In the search the airplane, owned by Maricopa County, was used. Deputy Sheriff Gerald Barnes was assigned to go along in the plane as an observer. His duties during the course of the flight, as found by the trial court, "were to observe the ground over which the airplane traversed and upon observing any suspicious or suspect areas to direct the pilot's attention to such areas." It is stipulated that Barnes had no duties with respect to the physical manipulation of the aircraft. Testimony established that acting as an observer on such flights was only an occasional job of deputy sheriffs and that this was the first time Barnes had ever been assigned to such a job.

The flight terminated in a crash of the aircraft in which Deputy Sheriff Barnes was killed. At the time of his death there was in force and effect an insurance policy on his life issued by appellant, the Prudential Insurance Com-

pany of America, in the face amount of $5000, with accidental death benefits in the additional amount of $5000. Appellee Jean Lee Barnes, widow of Gerald Barnes, was named in the policy as the principal beneficiary thereof. She is a citizen of Arizona and appellant is a citizen and resident of New Jersey. Appellant paid to the widow the face value of the policy, $5000, but refused to pay the further sum of $5000 provided for in the policy for accidental death because of a limitation in the policy which reads as follows:

"No such Accidental Means Death Benefit shall be payable if payment is precluded by any one or more of the following Conditions and Exceptions:

"(1)  *  *  *

"(2)  *  *  *

"(3) No such Accidental Means Death Benefit shall be payable if the injury or death results directly or indirectly from travel or flight in or descent from any kind of aircraft used anywhere for any purpose except that this Exception shall not be applicable if the Insured is a passenger with no duties aboard the aircraft while in flight (a) in a passenger aircraft operated by an incorporated and governmentally certificated Scheduled Air Carrier but not operated for any military, naval or air forces, or (b) in any aircraft which is not being used for military, naval or aviation training or practice purposes, provided such flight is within the forty-eight states of the United States of America, the District of Columbia, the Territory of Hawaii and Canada.

"(4)  *  *  *"

Suit was commenced and the trial court entered judgment for appellee, holding that the terms "passenger" and "duties" are ambiguous as used in the exception clause and that Barnes' duties aboard the plane were not such as to bring him within this exception to the double indemnity clause. Appellant challenges these holdings.

■■ It is settled law that when any provision of an insurance policy is subject to more than one reasonable interpretation, that interpretation which favors the insured is adopted, since the insurer authors the contract of insurance. Thus, we have presented the following question: Is the phrase "passenger with no duties aboard the aircraft while in flight" subject to a reasonable interpretation which would result in coverage of Deputy Sheriff Barnes? We think the answer is yes. A reasonable man looking at this phrase could very well conclude that it distinguishes between persons involved in the flying of planes and persons not so involved—that appellant intended to insure most people who fly but not those whose profession or hobby is connected with the actual flying of planes and who are therefore normally subject to more repeated risks and risks more directly within their own control. Thus coverage is limited to "passengers", as distinguished from "operators" of the aircraft. To make the distinction clearer, the phrase "with no duties aboard the aircraft while in flight" is added. A reasonable man having in mind the purposes of insurance and the normal motives of insurers would not conclude that this phrase was intended to exclude anyone who had *any* kind of a duty to be performed aboard a plane while it was in flight—for example a newspaper photographer ordered by his editor to take a San Francisco to Los Angeles flight on a scheduled airline and to photograph the terrain below as the plane passed over it certainly would not be within the exception. We think the phrase refers to duties connected with flying the plane, since as a matter of fact those having such duties are normally subjected to greater and more self-controlled risks than the occasional rider of a plane.

■ Appellant argues technical definitions of "passenger" and "duties" taken from dictionaries and from cases having different fact situations and different policy provisions. In most of these cases the decision was for the *insured*. The cited cases dealing with the word "pas-

senger" define it as applied to common carriers, a definition not applicable here since this policy insures flight in "any aircraft" which is not being used for military, training, or practice purposes. In common parlance the term "passenger" is often used broadly. Thus people riding in cars are referred to as being either "drivers" or "passengers", and one finds references to "six-passenger" cars and "four-passenger" planes, etc. The term "duty" is likewise subject to different meanings in different contexts. What controls is not the interpretation of individual words which are not defined in the policy itself, but the interpretation which the ordinary man would give to the phrase as a whole taken in the context of the whole policy and the average man's knowledge of the way insurance is set up. Under such a test, *a* reasonable interpretation and probably *the most* reasonable interpretation of the provision involved is that it differentiates between those involved in the flying of airplanes and those not so involved.

Judgment Affirmed.