**Dolores AYRES, Plaintiff-Appellee,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant-Appellant.**

**No. 77–1761.**

United States Court of Appeals, Ninth Circuit.

May 23, 1979.

Rehearing Denied Sept. 12, 1979.

Donald B. York, Adams, Duque & Hazeltine, James S. Cline, Los Angeles, Cal., for defendant-appellant.

Martin J. Schnitzer, Los Angeles, Cal., for plaintiff-appellee.

Before HUFSTEDLER and TRASK, Circuit Judges, and McNICHOLS,* District Judge.

McNICHOLS, District Judge.

This is an appeal from a summary judgment granted by the district court in favor of appellee. The district court exercised jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction of this appeal under 28 U.S.C. § 1291.

Prudential Insurance Company of America ("Prudential"), appellant here and the defendant below, issued Group Insurance Policy No. G–91550 to Getty Oil Company ("Getty") covering Getty's employees with life insurance and accidental death insurance. The group policy insured Getty employee Dan Ayres, now deceased, by way of two certificates of insurance. The certificates named Dan Ayres' wife, Dolores Ayres, appellee here and plaintiff below, as Dan Ayres' beneficiary.

Dan Ayres died in the crash of a private airplane he was piloting. Prudential paid $36,500.00 to Dolores Ayres under the regular life insurance portion of his certificate of insurance, but refused to pay under the portion which provided coverage for accidental death. Prudential contends that the following limiting provisions, found in the accidental death portions of the policy and certificates, exclude Dan Ayres from accidental death coverage:

"Not Covered: Any loss which results—

(1) from suicide or attempted suicide, whether the Employee is sane or insane, or

(2) directly or indirectly from bodily or mental infirmity or disease or medical or surgical treatment thereof, or

(3) from any infection, other than a pyogenic infection occurring through and at the time of an accidental cut or wound, or

(4) from war or any act of war ('war' means declared or undeclared war and includes resistance to armed aggression), or

(5) *from travel or other movement by means of, or descent from or with, any kind of moving aircraft aboard which the Employee has any duties relating in any way to such aircraft or to its crew or aboard which he is giving or receiving training for any such duties ('aircraft' includes rocket craft or any other vehicle, conveyance, or device designed for travel or other movement in or beyond the earth's atmosphere)."* (Emphasis supplied.)

Prudential refused payment for accidental death due to its belief that the language of paragraph (5) of the exclusion, *supra*, operated to suspend coverage any time the insured undertook a duty relating to the operation of an aircraft aboard which he was traveling. Therefore, Prudential refused to pay accidental benefits for Dan Ayres' death because he was piloting the airplane in which he died.

Appellee sued Prudential on the theory that the word "Employee," in conjunction with the word "duties," meant that the exclusion acted only when the insured operated an aircraft in conjunction with a duty of employment for Getty.

The parties filed cross-motions for summary judgment. The district court granted appellee's motion upon the theory that the limitation clause was ambiguous in that it

---

* Honorable Ray McNichols, Chief Judge, United States District Court, District of Idaho, sitting by designation.

could be reasonably read either as Prudential argued or as appellee argued, and therefore it must be construed against the insurance company. Prudential has appealed this judgment against it.

The law of the forum state governs cases brought to federal district courts by 28 U.S.C. § 1332 diversity jurisdiction. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The interpretation of the insurance contract at issue in this case is thus controlled by California law.

Under California law, the intent and reasonable expectations of the parties govern the construction of insurance contracts. *Atlantic National Insurance Company v. Armstrong*, 65 Cal.2d 100, 52 Cal.Rptr. 569, 577, 416 P.2d 801, 809 (1966). What the parties intended is, in fact, the primary focus for a court when construing contracts of insurance. *General Casualty Co. of America v. Azteca Films, Inc.*, 278 F.2d 161 (9th Cir.), *cert. denied*, 364 U.S. 863, 81 S.Ct. 103, 5 L.Ed.2d 85 (1960).

In the *Azteca Films* case, this Court was asked to construe limiting language in a contract of insurance, applying California law. The contract in question insured the defendant against liability for damage or destruction of third persons' property. The policy contained an exclusion for claims and expenses arising out of use of the property after the insured relinquished "possession" of it.

Plaintiff insurance company argued that "possession" meant only actual possession so that the limiting language covered a broad area. The insured argued, however, that "possession" included constructive possession and the exclusion did not operate until the insured parted with both actual and constructive possession. The district court perceived an ambiguity arising from the use of the word "possession," and therefore construed the contract strictly against the insurance company. The insurance company appealed that judgment.

While searching out the intent and reasonable expectations of the parties, this Court recognized the first question to be whether the clause under examination— because of the word "possession"—is ambiguous. If it is, the familiar rules of strict construction against an insurer will become applicable. But any ambiguity must be real before the court is justified in invoking the rule. It is ambiguity and not awkwardness of language which opens the door for construction.

*Id.* at 165.

Ambiguity is not necessarily to be found in the fact that a word or phrase isolated from its context is susceptible of more than one meaning. As expressed by the Seventh Circuit in *Hill v. Standard Mut. Casualty Co.*, 110 F.2d 1001, 1004:

> "To find that a word or phrase isolated from its context is susceptible to more than one meaning, or that a word or phrase in its context is susceptible to one reasonable and one unreasonable meaning, does not spell ambiguity."

. . . . .

All rules of construction are subordinate to the leading principle that the intention of the parties, to be collected from the entire instrument, must prevail, unless inconsistent with some rule of law. *Chesapeake & Ohio Canal Co. v. Hill*, 15 Wall. 94, 82 U.S. 94, 21 L.Ed. 64. The test to be applied by the court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean. *Trousdell v. Equitable Life Assur. Soc. of United States*, 55 Cal.App.2d 74, 130 P.2d 173, 990; *New York Life Ins. Co. v. Hiatt*, 9 Cir., 140 F.2d 752, 168 A.L.R. 551. In other words, the criterion is ambiguity from the standpoint of a layman, not from that of a lawyer. Where it is possible to adopt a construction which is favorable to the insured without doing violence to the policy wording that construction will be preferred. This anticipates a reasonable interpretation of the language and can apply only so far as the fair application of the ordinary meaning of language permits. But this rule of strict construction

against the insurer cannot apply unless there is some reasonable basis for doubt. Couch on Insurance 2d states:

> " 'Usual and ordinary meaning' has been stated variously to be that meaning which the particular language conveys to the popular mind, to most people, to the average, ordinary, normal man, to a reasonable man, to persons with usual and ordinary understanding, to a businessman, or to a layman." Couch on Insurance 2d § 15:18, (citing among other cases the California case of *Hobson v. Mutual Benefit Health & Accident Assoc.*, 99 Cal. App.2d 330, 221 P.2d 761.)

*Id.* at 167–168.

Later the same year, this Court reiterated the interpretative rule of California Law:

> The term "duty" is likewise subject to different meanings in different contexts. What controls is not the interpretation of individual words which are not defined in the policy itself, but the interpretation which the ordinary man would give to the phrase as a whole taken in the context of the whole policy and the average man's knowledge of the way insurance is set up.

*Prudential Insurance Company of America v. Barnes*, 285 F.2d 299, 301 (9th Cir. 1960).

Finally, it must always be borne in mind that the end purpose of all such rules of construction is the discovery of the reasonable expectations and intentions of the parties. *General Casualty Co. of America v. Azteca Films, Inc.*, 278 F.2d at 167; *Herzog v. National American Insurance Company*, 2 Cal.3d 192, 84 Cal.Rptr. 705, 465 P.2d 841, 843 (1970). When this inquiry focuses upon the interpretation of words or phrases, "it is the duty of the appellate court . . . to make its own independent determination of the meaning of the language used in the instrument under consideration." *Bareno v. Employers Life Insurance Co. of Wausau*, 7 Cal.3d 875, 103 Cal.Rptr. 865, 868, 500 P.2d 889, 892 (1972).

The task of this Court, therefore, is to ascertain the meaning of the contested phrase "Employee has any duties" against the background of a layman's understanding of the entire policy and the average man's knowledge of the way insurance is set up.

This Court has reviewed copies of the policy and the certificates issued thereunder. One certificate, certifying insurance in the amount of $1,500.00, is for non-contribution life and accidental death and disability insurance. The other certificate, certifying coverage for $35,000.00, is regular life and accident insurance. Because both are substantially identical in the relevant particulars, we will analyze only the latter policy.

The regular life and accident certificate begins by certifying that "the Employee is insured under Group Policy G–91550." Immediately thereunder is the designation "POLICYHOLDER" followed by the printed name "GETTY OIL COMPANY." Below this is set forth "EMPLOYEE," followed by a space for the insured individual's name. After these initial designations of who is the policyholder and who is the intended insured, neither Getty's name nor that of the insured employee appears again in the certificate. To know who is spoken of when the certificate speaks of the "Employee," the reader must refer back to the antecedent name written in the space provided at the beginning of the certificate. Therefore, the use of the word "Employee" in the certificate necessarily denotes for the reader the particular individual named at the beginning of the certificate.

The district court believed that, at least in the instance of the aviation exclusion clause in issue, the term "Employee" serves a double duty: not only does it denote the insured person, Dan Ayres, as it necessarily must, but it also implies that the insured must be functioning in some capacity related to his employment by the policyholder, Getty. While ascertaining the intentions of the parties, the question before this Court is whether such an interpretation is reasonably consistent with the other uses of the word "Employee" throughout the entire certificate. *Jurd v. Pacific Indemnity Company*, 57 Cal.2d 699, 21 Cal.Rptr. 793, 371 P.2d 569, 571–572 (1962) citing 27 Cal.

Jur.2d, Insurance, § 280, p. 778. We believe that it is not.

Some examples of how the word "Employee" is used elsewhere in the policy will show that forcing upon it a construction which connotes that the insured individual is doing work for the policyholder is anomalous, inconsistent, and unreasonable.

The provision for death benefits is one such example. It reads "[i]f the Employee dies while a covered individual, the amount of his insurance under this Coverage is payable when Prudential receives due written proof of death." Should the word "Employee" as used here be made to bear the burden of meaning the insured must be, at the time of death, engaged in employment-related activities for Getty, appellee would not have received the $36,500.00 already paid to her by Prudential because it is uncontested by either party to this litigation that Dan Ayres died off the job.

Another example exhibiting that "Employee" is used only as a convenient substitute for the insured's name may be found in a portion of the accidental death provision not at issue in this case. The first condition precedent for payment of accidental death benefits is that "[t]he Employee sustained an accidental bodily injury while a covered individual." If "Employee" as used here is meant to suggest that the injury suffered must be sustained in an employment-related capacity, once again there exists no question that appellee is ineligible for benefits.

These examples illustrate that if "Employee" is read consistently throughout the policy, not only to designate the insured individual, but also to imply activity in a work-related capacity, then no benefits whatsoever would accrue to appellee. If, however, the sole function given the word throughout is to designate the insured individual, then appellee rightfully received death benefits for the loss of her husband, but is not entitled to accidental death benefits because Dan Ayres was piloting an airplane at the time he died.

Notwithstanding the argument accepted below, involving the word "duties," a uniform reading of "Employee" is dictated by "the average man's knowledge of the way insurance is set up." *Prudential Insurance Company of America v. Barnes*, 285 F.2d at 301. It is no secret that insurance companies generally seek to limit their liability under life insurance policies for injuries or deaths resulting from the insured's connection with certain enumerated activities. The common risks which accident and death policies exclude are death by suicide, Couch on Insurance 2d §§ 40:4, 41;195; death or disability caused by certain diseases or infections, *Id.* § 41:398; death or injury suffered during war or military service, *Id.* § 41:696; and death or injury connected with aviation, *Id.* § 41:541; Annotations at 155 A.L.R. 1026 and 17 A.L.R.2d 1041. The average individual should not be surprised, therefore, to find that these very same exclusions do in fact exist in the accident coverage portion of the certificate issued to Dan Ayres. Included among these common exclusions is the aviation clause at issue in this case.

These types of provisos, which exclude aviation-related risks from coverage, are not only common, but their usual and ordinary purpose has been characterized by the courts. In the words of this Court, such a proviso "distinguishes between persons involved in the flying of planes and persons not so involved—that [the insurance company] intended to insure most people who fly but not those whose profession or hobby is connected with the actual flying of planes and who are therefore normally subject to more repeated risks and risks more directly within their own control." *Prudential Insurance Company of America v. Barnes*, 285 F.2d at 300. The exclusion fails only if the insured can reasonably believe aviation is not excluded in light of what is publicly known of such exclusions.

Recognizing that such provisos exist, and that they exist for some reason, the reasonable understanding of laymen must be that the inclusion of such a proviso deserves some effect. To render language nugatory is unreasonable as a matter of law. *General Casualty Co. of America v. Azteca Films, Inc.*, 278 F.2d at 168. Yet, interpreting

"Employee" and "duties" in the aviation exclusion clause to mean employment-related duties robs that clause of any effect. In the case at bar, it is undisputed that Getty neither owned aircraft nor had their employees operate aircraft in the course of their employment, and that these facts were generally known at Getty. Therefore, allowing the aviation exclusion effect only when an employee operated an airplane in the course of his employment at Getty means allowing it no effect at all, simply because it failed to limit any risk to the insurer. An interpretation of this type, which renders the language of the exclusion meaningless because it fails to limit any risk, cannot be acceptable to a layman or a court. It comports neither with the common understanding that aviation exclusions exist to limit some risk, or the reasonable expectation that language in an insurance contract must mean something.

Recognition of the function of the aviation exclusion leads inescapably to the conclusion that the exceptional reading of "Employee" together with the word "duties" to mean employment-related duties is an unreasonable interpretation, and therefore an unacceptable one. We hold, therefore, that the presence of the word "duties" in the aviation exclusion clause does not alter the conclusion that "Employee" must be read consistently throughout the certificate solely as a designation for the person insured.

The judgment of the district court is reversed. Because we find the aviation exclusions to the accidental coverage portions of Dan Ayres' certificates of insurance to be unambiguous exclusions from coverage for death while piloting an airplane, summary judgment for appellant is mandated.

The cause is remanded to the district court to enter judgment in accordance with this opinion.

HUFSTEDLER, Circuit Judge, dissenting:

I am unable to concur in the opinion of my brothers because I am convinced that the district court properly interpreted the contract in the light of the California cases that are the controlling law in this diversity case.

The key provision is the exclusion clause, providing, in relevant part:

"*Not Covered*: Any loss which results—

.          .          .          .          .

(5) from travel or other movement by means of, or descent from or with, any kind of moving aircraft aboard which the Employee has any duties relating in any way to such aircraft or to its operation, equipment, passengers or crew or aboard which he is giving or receiving training for any such duties   .   .   .   ."

The decedent was not performing any duties aboard the aircraft connected with his employment. Prudential refused payment citing the exclusion clause and contended that the exclusion was applicable because the decedent, as a pilot, had "duties" relating to the aircraft or its operation. The district court decided that the exclusion clause "is ambiguous because the word 'duties' included therein, used in conjunction with 'Employee,' may be interpreted reasonably to mean either employment-related duties or any duties relating to the aircraft, whether employment-related or not." Accordingly, the district court resolved the ambiguity against the insurer and granted summary judgment to the plaintiff.

The majority opinion overturns the district court on the grounds that the policy language was unambiguous and the plaintiff's interpretation of the policy "unreasonable" because (1) "the sole function given the word ["Employee"] throughout is to designate the insured individual" (at 1313) and the word therefore does not carry any of its ordinary connotations; (2) the average person should not be surprised to discover that the insurance company had sought to limit its exposure by excluding aviation-related risks; and (3) plaintiff's interpretation "renders the language of the exclusion meaningless because it fails to limit any risk." (at 1314.)

The California cases are solid in the acceptance of the principle "[i]f policy provisions are susceptible to alternative readings, doubts are resolved against the insurer." (*Paramount Prop. Co. v. Transamerica Title Ins. Co.* (1970) 1 Cal.3d 562, 83 Cal.Rptr. 394, 398, 463 P.2d 746, 750; *Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263, 54 Cal.Rptr. 104, 107, 419 P.2d 168.) "*If semantically permissible*, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates." (*Continental Cas. Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437, 296 P.2d 801, 809 [emphasis added].) The burden rests on the insurer to phrase an exclusion in "clear and unmistakable language." (*State Farm Mutual Automobile Ins. Co. v. Jacober* (1973) 10 Cal.3d 193, 110 Cal.Rptr. 1, 6, 514 P.2d 953; *Harris v. Glens Falls Ins. Co.* (1972) 6 Cal.3d 699, 100 Cal.Rptr. 133, 134, 493 P.2d 861.) "If an insurer intends to exclude coverage . . . it must draft its policy to avoid any misinterpretation by the average layman." (*State Farm Mutual Automobile Ins. Co. v. Jacober, supra,* 110 Cal. Rptr. at 10, 514 P.2d at 962.)

The only question before us is whether plaintiff's interpretation of the policy language is, as the district court found, reasonable, i.e., "semantically permissible." "[W]e are not required, in deciding the cases at bar, to select one 'correct' interpretation from the variety of suggested readings. . . . Instead, even assuming that the insurer's suggestions are reasonable interpretations which would bar recovery by the claimants, we must nonetheless affirm the trial courts' finding of coverage so long as there is any other reasonable interpretation under which recovery would be permitted in the instant cases. 'If semantically permissible, [an insurance] contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relate[d].' " (*State Farm Mutual Automobile Ins. Co. v. Jacober, supra,* 110 Cal.Rptr. at 6–7, 514 P.2d at 958–959 [citation omitted].) Of course, "where the terms of the policy are plain and explicit,

the court will indulge in no forced construction so as to cast a liability upon the insurance company which it has not assumed." (*New York Life Ins. Co. v. Hollender* (1951) 38 Cal.2d 73, 81, 237 P.2d 510, 514.) However, that principle applies only where the language is not "susceptible to alternative readings" by the average layperson.

The district court correctly concluded that the word "duties," used in conjunction with the word "Employee," might reasonably be interpreted by an average layperson to mean employment-related duties. That may not be the *most* reasonable interpretation, but it is "semantically permissible."

The majority opinion concludes that the word "Employee" in the policy is a cipher representing the name of the insured and that the ordinary connotations of the word are not to be considered. A similar argument was recently rejected by the California Court of Appeal. In *National Indemnity Co. v. Demanes* (1978) 86 Cal.App.3d 155, 150 Cal.Rptr. 117, the court construed an exclusion for bodily injury to a "named insured." The name of the decedent appeared as one of two names on the first page of the policy after the words "Name of Insured." The court found the attempted exclusion "cloudy" and therefore ineffective. Noting that there was no express definition of the term "named insured," the court stated: "It is arguable that the layman purchasing the policy and reading it might deduce from this that the two men matched the term of art, 'the named insured'; but it is likely enough that, seeing the words 'insured' (merely 'insured persons' such as permissive users are not within the exclusion) and 'named insured' used repeatedly throughout the policy, they would not be struck by the fact that they were in a special and, in circumstances such as are present here, a disfavored category." (150 Cal.Rptr. at 120.)

Further, "named insured" is a relatively neutral term; "Employee" is not. Words in an insurance policy are to be given their ordinary meaning, unless circumstances indicate a contrary intention. (*Healy Tibbitts Constr. Co. v. Employers' Surplus Lines Ins.*

*Co.* (1977) 72 Cal.App.3d 741, 140 Cal.Rptr. 375, 379.) No such intention is manifested here. In fact, the choice of the word "Employee" to designate the insured person, in the context of the policy's coverage terms, invites the layperson to consider the word in its ordinary sense. Coverage is only available to Getty employees; when the insured ceased to be an "Employee" in the ordinary sense, his insurance coverage terminates. The fact that Prudential could have avoided any ambiguity by using the word "Insured" instead of the word "Employee," as, in fact, it did in the policy at issue in *Prudential Insurance Co. of America v. Barnes* (9th Cir. 1960) 285 F.2d 299, is an argument that cuts against, rather than for, Prudential's position.

We should tread cautiously in declaring an interpretation favorable to an insured "unreasonable." California cases abound with seemingly clear language which has been held ambiguous. In *Mid-Century Ins. Co. v. Hauck* (1973) 35 Cal.App.3d 293, 110 Cal.Rptr. 707, coverage included "bodily injury, including death at any time resulting therefrom, sustained by any person," but excluded "bodily injury" sustained by a member of the same household. The court held that "bodily injury" in the exclusion clause did not include death. The court observed that if the insurer sought to exclude an action for wrongful death, it could have included a definition that would have achieved that goal. In *State Farm Mutual Automobile Ins. Co. v. Jacober, supra,* the court held that an exclusion for "bodily injury to the insured" was ambiguous, and could reasonably be read to refer "only to that person . . . who faces potential liability," that is, the driver, rather than, as the insurer argued, to all insured persons or the named insured. In *Paramount Prop. Co. v. Transamerica Title Ins. Co., supra,* the court held that "payment in full" was ambiguous, and did not include a payment followed, two months later, by a suit for refund. In *Gray v. Zurich Ins. Co., supra,* the coverage excluded defense of a suit for an intentional tort. The court held that the insurer was obligated to defend a suit charging the insured with assault, when the insured claimed self-defense, although the plaintiff had prevailed against the insured. The court found the policy language ambiguous "by its very nature."

The cases relied upon by the majority opinion do not carry the reversal freight. *Prudential Insurance Company of America v. Barnes* (9th Cir. 1960) 285 F.2d 299, is irrelevant because California law was not involved. In that case, the insured and the employer were domiciled in Arizona, where the accident occurred, and the insurance company was a citizen and resident of New Jersey. Moreover, in *Barnes,* Prudential chose to write the aviation exclusion clause using the word "Insured" rather than the word "Employee." The *Barnes* opinion did not consider the issue before us. Rather, the opinion says that the issue was: "Is the phrase 'passenger with no duties aboard the aircraft while in flight' subject to a reasonable interpretation which would result in coverage of Deputy Sheriff Barnes?" (285 F.2d at 300.) The court answered that question affirmatively.

*General Casualty Co. of America v. Azteca Films, Inc.* (9th Cir. 1960) 278 F.2d 161, is relevant only as a general statement of the principles of construing insurance contracts. The exclusionary clause involved was completely different from the one which we are considering. In any event, our reading of the California law as of 1960 provides no guidance for interpreting the California law at the present time because California insurance law has undergone significant changes since then.

The majority opinion simply does not address the now well-settled principles in California that "[w]hereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured, exclusionary clauses are interpreted narrowly against the insurer." (*State Farm Mutual Automobile Ins. Co. v. Partridge* (1973) 10 Cal.3d 94, 109 Cal.Rptr. 811, 816, 514 P.2d 123, 128 [citations omitted].)

The majority opinion suggests that the district court's construction of the language of the aviation exclusion clause would ren-

der that clause nugatory because Getty did not have any employees with duties relating to aircraft. The fact that, at the time the policy was issued, Getty did not have any employees with aircraft-related duties is a neutral factor. We know nothing from the record about Getty's history in respect of hiring persons with aircraft-related duties, nor do we know anything about Getty's intentions in the future during the period of policy coverage. Insurance policies frequently cover risks that may or may not be encountered during the period of policy coverage. For example, a clause in the same policy excludes losses resulting from suicide, whether the employee is sane or insane. That clause limits a risk even if there were evidence that none of Getty's employees was insane at the time the policy was written.

I can find nothing in the record to support the majority's conclusion that the insured should have known that Prudential would attempt to exclude aviation-related risks. (at 1313–1314.) This policy manifestly excludes some, but not all, aviation-related losses. The question is whether the policy language that Prudential chose excluded this particular loss. We have no basis upon which to take judicial notice that people generally, or plaintiff's decedent in particular, have knowledge of "common exclusions" in insurance policies. Even if we could take such judicial notice, such general knowledge would not be relevant in deciding whether a particular common exclusion was within or without the policy in question.

There is surely more than a slight amount of irony in holding that the insurance policy was not ambiguous when, of the four judges who have construed the policy, two read the exclusion one way, and two another. Under all of the circumstances, I see no basis, under controlling California law, to disturb the district court's decision.