MARKLINE COMPANY, INC. vs. THE TRAVELERS
INSURANCE COMPANY.

Middlesex.   April 9, 1981. — July 27, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & NOLAN, JJ.

*Insurance*, Burglary.  *Contract*, Insurance.

A policy of insurance providing coverage for "burglary" of a store by a
   person leaving visible marks of force and violence did not cover an in-
   ventory shortage discovered after activation of an alarm at the store in
   the absence of such marks, and it was error for a judge, sitting without
   jury, to find for the insured, where the policy was unambiguous,
   where the record did not warrant consideration of a theory of "reason-
   able expectation," and where arguments based on implied warranty or
   consumer protection violation were without merit.  [140-143] LIACOS,
   J., dissenting, would remand the case for a more specific statement of
   the reasons for the judgment.  [148]

CIVIL ACTION commenced in the Superior Court on Janu-
ary 21, 1975.

The case was heard by *Forte*, J., a District Court judge
sitting under statutory authority.

After review was sought in the Appeals Court the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*John P. Linehan* for the defendant.
*Barry Y. Weiner* for the plaintiff.

NOLAN, J.  The defendant issued a policy of insurance
called Storeowners 700 (policy) to the plaintiff for the
period May 1, 1974, to May 1, 1975.  It furnished coverage
for property damage, general liability, and automobiles.
The policy was in force at 2:03 P.M. on June 15, 1974,
when the burglar alarm was activated at the plaintiff's
store.  Police and alarm company personnel arrived on the
scene at approximately 2:42 P.M.  The judge found that the

plaintiff's president and one of its employees had closed and locked the plaintiff's store at 1 P.M. on June 15, 1974. In early July, when the owner first learned the alarm had been actuated, an inventory was taken. Ultimately, the judge found for the plaintiff in the amount of the inventory loss, which he determined to be $19,380, plus costs. This was error.

The plaintiff had purchased burglary coverage. The policy defines burglary as follows: "'Burglary' means the felonious abstraction of insured property: (a) from within the premises by a person making felonious entry therein by actual force and violence, of which force and violence there are visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to, the exterior of the premises at the place of such entry; (b) from within a showcase or show window outside the premises by a person making felonious entry into such showcase or show window by actual force and violence, of which force and violence there are visible marks thereon; or (c) from within the premises by a person making felonious exit therefrom by actual force and violence as evidenced by visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to, the interior of the premises at the place of such exit." The judge found that "there were no visible marks of entry or exit by tools, explosives, electricity or chemicals or physical damage to the entry or exit." Therefore, there could be no recovery under burglary coverage. See *Shattuck & Jones, Inc.* v. *Travelers Indem. Co.*, 323 Mass. 146, 147 (1948). It is the plaintiff's burden to prove that its loss was within the description of the risks covered. *Tumblin* v. *American Ins. Co.*, 344 Mass. 318, 320 (1962). The reason for the visible marks restriction is to protect insurers from "inside jobs." 10 G. Couch, Insurance, § 42:129 (2d ed. 1962).

The plaintiff presses the argument that the trial judge read the policy as providing coverage for theft, in addition to burglary coverage. The judge's findings and conclusions do not include his reasons for finding for the plaintiff. If the plaintiff is correct in its assumption of the judge's basis

for recovery, the judge made a clearly erroneous ruling. The policy specifies the plaintiff's purchase of burglary coverage but not coverage for theft.  The relevant provisions of the policy are reproduced in the margin.[1]

There is no merit to the plaintiff's claim that the policy is sufficiently ambiguous to permit us to read "theft" coverage into the contract between the parties.  Before we can apply the settled principles of law that any obscurity or vagueness must be construed against the defendant, see *Slater* v. *United States Fidelity & Guar. Co.*, 379 Mass. 801, 804 (1980), we must conclude that there is an ambiguity.  We are unable to do so.  Rare, indeed, is the insurance policy which permits easy reading.  The language is generally forbidding, if not esoteric.  However, as insurance policies go, the one under review is reasonably clear in this respect.  We have read those sections of the policy which define and limit "theft," but they do not solve the threshold problem of the coverage purchased by the plaintiff.  In short, the plaintiff did not buy "theft" coverage.

Next, the plaintiff asks us to sustain the judgment below because of its "reasonable expectation" of coverage for this type of loss.  The plaintiff concedes that no Massachusetts case can be found to support this position.  It appears that

---

[1] "3.  Coverages Afforded and Limits of Liability — Insurance is afforded for such of the following coverages for which a limit of liability is inserted. . . .

a. Separate Limits Option

| Coverages | Limits of Liability | Deductible Amount |
|---|---|---|
| A. Employee Dishonesty: Per Loss | $ | $ |
| Per Employee | $ | $ |
| B. Loss Inside the Premises | $ | $ |
| C. Loss Outside the Premises | $ | $ |
| D. Money Orders and Counterfeit Paper Currency | $ | $ |
| E. Depositors Forgery | $ | $ |
| F. Merchandise: Section A-Burglary | $ SEE 501 | $ |
| Section B-Theft | $ | $ |
| G. Credit Card Forgery | $ | $ |

the trial judge did not rely on this theory. We are not pre-
pared to make this the first case in which this court adopts
such an approach to the purchase of insurance. In any
event, the testimony of the plaintiff's president that it was
his understanding that the "[c]overage was complete fire,
theft and liability insurance" falls fatally short of evidence
to support the plaintiff's claim of "reasonable expectation"
of coverage for this loss. Even if we were to adopt the
theory of reasonable expectation, the plaintiff would not
prevail. In the Restatement (Second) of Contracts § 237,
Comment f (Tent. Draft Nos. 1-7, 1973), the following de-
scription of "reasonable expectation" appears: "Although
customers typically adhere to standardized agreements and
are bound by them without even appearing to know the
standard terms in detail, they are not bound to unknown
terms which are beyond the range of reasonable expecta-
tion. A debtor who delivers a check to his creditor with the
amount blank does not authorize the insertion of an infinite
figure. Similarly, a party who adheres to the other party's
standard terms does not assent to a term if the other party
has reason to believe that the adhering party would not
have accepted the agreement if he had known that the
agreement contained the particular term. Such a belief or
assumption may be shown by the prior negotiations or in-
ferred from the circumstances. Reason to believe may be
inferred from the fact that the term is bizarre or oppressive,
from the fact that it eviscerates the non-standard terms ex-
plicitly agreed to, or from the fact that it eliminates the
dominant purpose of the transaction. The inference is rein-
forced if the adhering party never had an opportunity to
read the term, or if it is illegible or otherwise hidden from
view. This rule is closely related to the policy against un-
conscionable terms and the rule of interpretation against the
draftsman." There is nothing in the record before us to
bring this case within the sweep of this language.

Equally without merit and authority are the plaintiff's
arguments based on an implied warranty, see the Uniform
Commercial Code — G. L. c. 106, § 2-315, and a con-

sumer violation, G. L. c. 93A, § 2. An attentive reading of the transcript fails to reveal any evidence to support these arguments. Further, the warranty section of the Uniform Commercial Code on which the plaintiff relies, at least by way of analogy, applies only "to transactions in goods." G. L. c. 106, § 2-102, as appearing in St. 1957, c. 765, § 1. The term "goods" is not sufficiently protean to include an insurance policy. See G. L. c. 106, § 2-105 (1). The defendant's conduct does not offend either the principles of unconscionability recognized at common law (see *Hodge* v. *Mackintosh,* 248 Mass. 181, 184-186 [1924]), or provisions not entirely dissimilar, codified in G. L. c. 106, § 2-302.

*Judgment reversed.*

*Judgment for defendant.*

LIACOS, J. (dissenting). The plaintiff purchased a "Storeowners 700" policy from the defendant through its agent. This policy purported on its face to provide coverage for (1) personal property damage, (2) general liability, and (3) crime, specifically "burglary." The word "burglary" is defined in later pages of the multipage policy to require "visible marks" before recovery might be had.[1] The fact of loss is not in dispute.

The trial judge found there were no "visible marks" of entry or exit yet found for plaintiff without further explanation in the written findings and rulings. This court now sets aside that finding for reasons which seem to me to have little relevance to what occurred at trial. While the court's opinion discusses the possibility that the judge may have thought plaintiffs had theft coverage, the judge's findings do not mention that theory. Additionally, plaintiff submitted extensive requests for findings of fact and rulings of law, none of which are based on a theory of "theft" coverage. Those

---

[1] See the language of the policy quoted in the court's opinion, *supra* at 140.

requests reflected instead alternative theories of recovery in which the reasonable expectations of the plaintiff as to the coverage he had secured played a prominent part.[2] The

[2] Plaintiff's proposed findings of fact were, inter alia, that: "(1) The plaintiff performed and complied with all conditions precedent to its recovery under the said policy. . . . (3) The loss sustained by the plaintiff was compensable under the policy. . . . (5) The parties reasonably expected that the said loss would be covered by the policy. (6) The sounding of the plaintiff's burglar alarm system at both the police station and at the alarm company's central station constituted 'visible marks of felonious entry' into or 'exit' from the plaintiff's premises 'by actual force and violence' sufficient to enable the plaintiff to recover under the policy. (7) The parties reasonably expected that, if the alarm was activated and a loss of inventory occurred which was otherwise unexplainable, then the loss would be covered by the policy."

Plaintiff's proposed rulings of law included, inter alia: "(2) Contracts, particularly adhesion contracts such as the present insurance policy, will be construed so as to effectuate the reasonable expectation of the parties. Restatement 2d of Contracts, §§ 237 and 238, and comments thereto; 3 Corbin on Contracts § 554; 4 Williston on Contracts § 602; *C & J Fertilizer, Inc.* v. *Allied Mutual Ins. Co.*, 227 N.W.2d 169 (Iowa 1975). (3) The objectively reasonable expectations of applicants and insured entities regarding the terms of insurance contracts will be honored even though painstaking study of policy provisions would have negated those expectations. *Rodman* v. *State Farm Mutual Ins. Co.*, 208 N.W.2d 903, 906 (Iowa 1973); *C & J Fertilizer, supra,* at 176, and cases cited; *Gray* v. *Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 107-108, 419 P.2d 168, 171-172 (1966). . . . (5) In light of the broad language of the defendant's insurance policy as contrasted with the exclusions buried in the end of the policy under the heading 'Additional or Amended Definitions' and other conduct by the defendant, the limitations of said insurance policy upon which the defendant seeks to rely are unconscionable and unenforceable as a matter of law. *C & J Fertilizer, supra,* at 180, and cases and authorities cited therein; Mass. Gen. Laws c. 93A; *Dodd* v. *Commercial Union Ins. Co.*, 365 N.E.2d 802 (1977); 6A Corbin on Contracts § 1376; Restatement 2d of Contracts, § 234. . . . (7) At all times material hereto, Albert Kline was a duly licensed agent of the defendant and therefore, as a matter of law, his statements and actions were those of the defendant and served to bind the defendant. Mass. Gen. Laws c. 175, § 163; *New England Acceptance Corp.* v. *Amer. Manufacturers Mutual Ins. Co.*, 344 N.E.2d 208 (1976), *adopted* 368 N.E.2d 1385 (1977). (8) Parol evidence is admissible as to the expectations of the parties concerning the insurance policy, its coverage and the conditions precedent to recovery. 19 K. Hughes, Mass. Practice, Evidence § 423, and cases cited; *Tri-City Concrete Co.* v. *A. L. A. Constr. Co.*, 343 Mass. 425, 179 N.E.2d 319 (1962); *Adzigian* v. *WORL Broadcasting Corp.*, 348 Mass. 777, 202 N.E.2d 915 (1964)."

judge made no explicit findings under this theory, but it appears that his findings were based on the theory of reasonable expectations.[3] Despite this state of the record, the court now concludes as to the issue of reasonable expectations that "[i]t appears that the trial judge did not rely on this theory." *Supra* at 141-142. This conclusion of the court is warranted neither by the record nor by the evidence adduced at trial. In my view, this conclusion is unjust to the trial judge as well as to the parties.

It is not apparent which of five premises of law advanced by trial counsel was the basis for the judgment of the judge. I would agree that the judge erred if he relied on the language of the insurance policy and concluded that the plaintiff had theft coverage. I do not believe he did so. I would

---

[3] The judge was clearly aware of the limited definition of burglary in the policy, having quoted the relevant portions of the policy in his findings. Having found there were no "visible marks" of entry or exit, he also found: "1. As a condition to have the insurance policy written covering his store, the plaintiff was required to have an 'UL' approved alarm system installed; and after the installation by the American Protective Service, the agent for the defendant approved the installation. 2. On Saturday, June 15, 1974, Herbert Kline, president of Markline Company, and another employee named Kyler Bloom closed and locked the store at 1:00 P.M. and exited the front door. 3. On Monday, June 17, 1974, Herbert Kline arrived at the store between 8:30 A.M. and 9:00 A.M. and observed there was not as much inventory in the same location in the back hall as he remembered to be there on June 15. The inventory consisted of calculators which were individual [*sic*] boxed and there were four calculators banded together in a 20" by 4" container. On June 15 he observed approximately two hundred banded boxes stacked, but on June 17th there weren't as many and he did not know why there appeared to be less. 4. Later in early July, the monthly report from the alarm company was received indicating that the alarm had been activated on June 15th in the afternoon. Herbert Kline notified Albert Kline and the two of them conducted an inventory. This inventory consisted of examining all sales slips, returns and purchases from the commencement of business to the date of the inventory. The prior inventories, dated January 30, 1974, and April 30, 1974, indicated no items were missing. . . . 6. As a result of the inventory conducted by Herbert Kline and Albert Kline, a loss of $19,380.00 was calculated. 7. Mr. Albert Kline, the insurance agent for Travelers, told Herbert Kline that the police had been notified by the alarm company and that was sufficient for the policy conditions. (There is no family relationship between Albert Kline and Herbert Kline.)"

also agree that a claim based on G. L. c. 93A, § 2, is without merit here, *supra* at 142-143, because the plaintiff has failed to demonstrate that he followed the procedural requisites of that statute. See *Whitinsville Plaza, Inc.* v. *Kotseas,* 378 Mass. 85, 100 (1979); *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688, 691, 704 (1975). There were, however, three other possible bases for this judgment, viz., the reasonable expectations doctrine, the unconscionability of the liability exclusion, or the breach of an implied warranty of fitness. See *C & J Fertilizer, Inc.* v. *Allied Mut. Ins. Co.,* 227 N.W.2d 169 (Iowa 1975), and authorities cited. Cf. *Avco Installment Sales Co.* v. *Edge,* 83 Misc. 2d 1011, 1018 (N.Y. Civ. Ct. 1975). While I concur that there is little or no support in the record for the last theory, I feel that the court pays short shrift to the claim of reasonable expectations and the notions of unconscionability inherent therein. The Iowa court has succinctly stated this doctrine in these terms: "The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Rodman* v. *State Farm Mut. Auto. Ins. Co.,* 208 N.W.2d 903, 906 (Iowa 1973). Professor Williston notes that unconscionability, though elusive of any single definition, lurks in "[t]he use of fine-print clauses negating the reasonable expectations of the nondrafting party." 15 S. Williston, Contracts § 1763A, at 215 (3d ed. 1972).

It is patently inconsistent for this court to acknowledge on the one hand that the doctrine lacks precedent in our case law and at the same time to declare that the evidence on record falls short of a reasonable expectation standard. The majority, quoting § 237 of the Restatement (Second) of Contracts, choose to ignore the clear parallel between this case and the Restatement: "Similarly, a party who adheres to the other party's standard terms does not assent to a term if the other party has reason to believe that the adhering party would not have accepted the agreement if he had known that the agreement contained the particular term.

Such a belief or assumption may be shown by the prior negotiations or inferred from the circumstances." Also, "[r]eason to believe may be inferred from the fact that the term . . . eliminates the dominant purpose of the transaction." *Supra* at 142. Restatement (Second) of Contracts, Comment f, at 541 (Tent. Draft Nos. 1-7, 1973). The evidence here was that the plaintiff expected "comprehensive coverage," having been assured of such coverage by the insurer's agent. The interpretation of the circumstances of the plaintiff's entering the contract are highly material under the general principle that the intent and reasonable expectations of the parties govern the construction of insurance contracts. *Ayres* v. *Prudential Ins. Co. of America*, 602 F.2d 1309 (9th Cir. 1979). See 12 G.J. Couch, Insurance § 45:5, at 107 (2d ed. 1964) (basic guide to insurance contract construction is that "parties apparently intended there should be effective coverage with respect to a particular kind or kinds of risk").

The Restatement informs us that "courts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it." Restatement (Second) of Contracts § 237, Comment e, at 540 (Tent. Draft Nos. 1-7 1973). Cf. *Ayres, supra* at 1313 ("the exclusion fails only if the insured can reasonably believe [burglary] is not excluded in light of what is publicly known of such exclusions"). Here, the judge found the plaintiff complied with the insurer's requirement that he install a burglar alarm. As soon as he received notice of the alarm's activation he notified the insurer. These facts, along with the agent's precontract assurances, bespeak the plaintiff's reasonable expectation that if the alarm was activated and a loss of inventory occurred, which was otherwise unexplainable, the loss was covered by the burglary provisions of his policy. The issue of reasonable expectation and the unconscionability of defeating those expectations by obscure exclusionary language was adequately raised in the plaintiff's trial brief requesting findings and rulings, and by the evidence at trial. If the judge

did utilize these theories in reaching his conclusion, then the question of the plaintiff's reasonable expectation has been placed squarely before us. Rather than put our own gloss on the unclear rulings of the judge, I would remand for a more specific statement of the reasons underlying the judgment. I dissent.