Josephson, J.
Plaintiffs Arnold M. Rubin and Benjamin Rubin originally brought this action against St. Paul Fire and Marine Insurance Company (St. Paul). Plaintiffs amended their complaint to add defendants United States Fidelity & Guaranty Insurance Company (USF&G) and General Accident Insurance Company of America (General). The case was removed to Federal District Court for the District of Massachusetts based upon diversity jurisdiction. Plaintiffs, however, added two more defendants, Commercial Union Insurance Company (Commercial Union) and Commerce Insurance Company (Commerce). These two defendants destroyed diversity jurisdiction and the matter was remanded to this court for further proceedings.
The first four counts of Plaintiffs’ second amended complaint allege claims against all the Defendants as follows: Declaratory Judgment on the duty to defend against third-party environmental claims (count I); Breach of Contract (Count II); Breach of Implied Covenant of Good Faith and Fair Dealing (Count III); Violations of G.L.c. 176D (Count IV). Defendant General now moves for summary judgment on all counts; Plaintiffs oppose the motion. For the reasons stated below, General’s motion for summaryjudgment is allowed.
Similarly, Defendant Commerce also moves for summaryjudgment on all counts. Plaintiffs oppose the motion and cross-move for summary judgment. For the reasons stated below, Plaintiffs’ cross-motion for summaryjudgment is denied and Commerce’s motion for summaryjudgment is allowed.
BACKGROUND
In January 1988, Plaintiff Arnold Rubin sold approximately 13.914 acres of property behind and adjoining 194 and 196 Millers Falls Road, Turners Falls, Massachusetts (premises) to the Boyle and Ruell Partnership (Boyle). On or about November 16, 1989, Boyle conveyed the premises to Franklin Commons Associates (Franklin). Pursuant to this conveyance, the property was tested for hazardous waste and oil contamination. This investigation revealed that the premises were contaminated by hazardous waste materials. Litigation ensued between Boyle and Franklin as a result of the hazardous materials discovery. Boyle alleges that it has expended substantial sums “for work both in investigating and remediating the premises from the presence of hazardous waste and materials and/or oil. ..”
Boyle brought suit against the plaintiffs herein seeking contribution for environmental clean up costs and attorneys fees pursuant to G.L.c. 2IE, §§4, 5 & 15. Hampshire Superior Court, Civil Action No. 91-187. The Boyle complaint alleges that “the Defendants Arnold M. Rubin and Benjamin Rubin or members of their family have owned the premises and adjoining property for approximately 60 years.” The Boyle complaint further alleges that the premises was used to “store scrap iron” and the adjoining property “has been variously used as a motorcycle sales and service facility, an autobody repair shop, an auto parts yard, and as the site for a broom manufacturing enterprise.”
Boyle also brought a third-party action against the Plaintiffs herein seeking contribution for environmental clean up costs pursuant to G.L.c. 2IE. Worcester Superior Court, Civil Action No. 92-1826. This third-party complaint contains identical allegations to those cited above.
The properties at 194 Millers Falls Road (194) and 196 Millers Falls Road (196) are adjoining. The contaminated premises lie fairly evenly behind both 194 and 196. From 1978 through 1982, Arnold Rubin owned the 196 parcel. During that same period, both Plaintiffs held title to the 194 parcel. Moreover, Plaintiff Arnold Rubin stated in his deposition testimony that he owned the premises conveyed to Boyle in the period between 1978 and 1982.
Recently, the 196 parcel contained a house and the 194 parcel had a building located on it. At various times, an auto repair shop, a broom manufacturing establishment, a farm, and an auto salvage yard operated on the 194 parcel. Similarly, the buildings on the 196 parcel have housed a furniture store, an appliance store, an auto repair shop and offices. During the early and mid 1980s a motorcycle shop conducted business out of a building located on the 196 parcel which has since been removed. Environmental tests indicated at least some contamination on the area near the former motorcycle shop.
General insured the Plaintiffs’ property at Millers Falls Road under three General Liability policies from *681 June 1,1986 through June 1,1989. Each of the policies contained an absolute pollution exclusion which is discussed more thoroughly herein. Plaintiffs made a demand for defense and coverage under the three policies of insurance which was denied by General.
Between April 2,1978 and April 2,1982, Commerce issued certain Homeowners Insurance Policies (Homeowners Policies) to the Plaintiff Arnold Rubin. The Homeowners Policies covered the residence at 196 Millers Falls Road. It is undisputed that each policy contained an exclusion for property damage “arising out of business pursuits of any insured ...” The Homeowners Policies also included an exclusion for “property damage to property owned by the insured.” Plaintiff Arnold Rubin demanded defense and indemnification under the Homeowners Policies. Commerce denied coverage based upon the exclusions.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassessov. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 390 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving parly is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion." Pederson v. Time, Inc., supra at 17. “[T]he opposing parly cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
The following general principles of insurance contract interpretation will control both Defendants’ motions for summary judgment. “It is settled in this jurisdiction, and generally elsewhere, that the question of the initial duty of a liability insurer to defend third-party actions against the insured, is decided by matching the third-party complaint with the policy provisions . . .” Sterilite Corp. v. Continental Casualty Co., 17 Mass.App.Ct. 316, 318 (1983), review denied, 391 Mass. 1102 (1984). If the complaint can be reasonably read to “state or adumbrate a claim covered by the policy terms," the insurer is obligated to defend. Id.; Continental Casualty Co. v. Gilbane Building Co., 391 Mass. 143, 146-47 (1984). The underlying complaint need only show a possibility of coverage for the duty to defend to arise. Camp Dresser & McKee, Inc. v. Home Insurance Co., 30 Mass.App.Ct. 318, 322 (1991).
The burdens of proof as to whether a duty to defend exists are as follows: (1) the insured has the duty of proving coverage and, once established, (2) the insurer has the burden of proving that an exclusion applies. Camp Dresser & McKee, Inc. u. Home Insurance Co., supra at 321, citing Markline Co. v. Travelers Insurance Co., 384 Mass. 139, 140 (1981); Murray v. Continental Insurance Co., 313 Mass. 557, 563 (1943); Rainer v. Canadian Universal Insurance Co., 359 Mass. 375, 381 (1971); Stop & Shop, Inc. v. Ganem, 347 Mass. 697, 703 (1964) (defendant retains burden of proof on exclusions even in declaratory judgment actions); Great Southwest Fire Insurance Co. v. Hercules Building & Wrecking Co., 35 Mass.App.Ct. 298, 302, review denied, 416 Mass. 1106 (1993). The court should resolve doubts created by ambiguous words or phrases against the insurer. Bates v. John Hancock Mutual Life Insurance Co., 6 Mass.App.Ct. 823 (1978).
Interpretation of the language of the exclusions is a question of law. Sav-Mor Supermarkets, Inc. v. Shelly Detective Services, Inc., 359 Mass. 221, 226 (1971); Camp Dresser & McKee, Inc. v. Home Insurance Co., supra at 323. Three principles guide the interpretation of exclusionary language. An insurance contract is to be construed according to the fair and reasonable meaning of its words. Cody v. Connecticut General Life Insurance Co., 387 Mass. 142, 146 (1982); Camp Dresser & McKee, Inc. v. Home Insurance Co., supra at 324. Exclusionary clauses are to be strictly construed against the insurer so as not to defeat any intended coverage. Vappi & Co. v. Aetna Casualty & Surety Co., 348 Mass. 427, 431-32 (1965). Doubts as to any ambiguous words or provisions are to be resolved against the insurer. Cody v. Connecticut General Life Insurance Co., supra at 146; Camp Dresser & McKee, Inc. v. Home Insurance Co., supra at 324. If the insurer fails to clearly exclude certain claims, the insurer bears the burden. Camp Dresser & McKee, Inc. v. Home Insurance Co., supra at 325 (citations omitted).
I. General Accident’s motion for summary judgment
The General Liability policies issued by General in favor of the Rubins contained an “absolute pollution exclusion.”[3] There appears to be no Massachusetts appellate court decisions directly considering the potential ambiguity of the absolute pollution exclusion. While Jussim v. Massachusetts Bay Insurance Co., 415 Mass. 24, 28 n.3 (1993), and Atlantic Mutual Insurance Co. v. McFadden, 413 Mass. 90 (1992), address the issue of an absolute exclusion, the vast majority of cases address the often troublesome “sudden and accidental” exception to the pollution exclusion. Polaroid Corp. v. Travelers Indemnity Co., 414 Mass. *682 747, 751-53 (1993); Goodman v. Aetna Casualty & Surety Co., 412 Mass. 807, 810-13 (1992); Liberty Mutual Insurance Co. v. SCA Services, Inc., 412 Mass. 330, 335 (1992); Shapiro v. Public Service Mutual Insurance Co., 19 Mass.App.Ct. 648, 650-53 (1985). The insurance contracts at issue, however, do not challenge this court with an interpretation of the “sudden and accidental” exception.
The Federal District Court for the District of Massachusetts has recently construed an absolute pollution exclusion in an insurance contract. Essex Insurance Co. v. Tri-Town Corp., 863 F.Supp. 38 (D. Mass. 1994). In Tri-Town, several hockey players, spectators and referees at a skating rink suffered illness after inhaling excessive amounts of carbon monoxide. Apparently, a malfunctioning Zamboni at the hockey rink released the harmful gas into the atmosphere. The insurance contract between the rink and insurer contained a pollution exclusion similar (but not identical) to the one herein. Id. at 39. The District Court found the pollution exclusion to be unambiguous and enforced it according to its terms. Id. at 41. As a result, the insurer satisfied its burden of averting the duty to defend.
The Plaintiffs argue primarily that the pollution exclusion herein is inherently ambiguous. To fortify their position, Plaintiffs have referenced the endorsement instituting the “absolute pollution exclusion” and a copy of a cover letter which allegedly accompanied the endorsement. The endorsement unequivocally establishes the absolute exclusion. The cover letter, on the other hand, suggests that certain pollution coverage was actually broadened by the endorsement. Plaintiffs contend that this conflict creates an ambiguity. However, the cover letter expressly provides that “(i]f there is any conflict between the policy and this summary, the provisions of the policy, of course, apply.” This conflict resolution language removes any potential ambiguity. Therefore, the absolute pollution exclusion herein is unambiguous as a matter of law.
In further support of their opposition, Plaintiffs allege the existence ofnumerous material factual disputes.[4]To forestall application of the absolute pollution exclusion, Plaintiffs contend that contamination occurred after the property was sold. However, Plaintiffs’ insurance contract with General also precludes coverage for “property damage to premises alienated by the named insured arising out such premises or any part thereof.” Plaintiffs concede that they sold the premises in question. Applying a rule of strict construction as required, this alienated premises clause will apply to exclude coverage even if the contamination occurred after Plaintiffs sold the property. See Camp Dresser & McKee, Inc. v. Home Insurance Co., supra at 324.
Plaintiffs also intimate that the lack of certainty surrounding the precise nature of the contaminant(s) creates a material issue of fact. The underlying facts evidence the presence of both lead and oil on the contaminated premises. As a matter of law, either lead or oil would fulfill the language of the pollution exclusion which lists “smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials, or other irritants, contaminants or pollutants ...” See United States Liability Insurance Co. v. Bourbeau, Civil No. 93-10906-MAP (D.Mass. July, 1994) (clean up costs for lead fall within the absolute pollution exclusion); compare Atlantic Mutual Insurance Co. v. McFadden, supra (holding that pollution exclusion did not apply to personal injury from lead paint in a private residence). Therefore, General has satisfied its burden as to the applicability of the pollution exclusion. Summary judgment is appropriate because no material facts are in dispute and General is entitled to judgment as a matter of law. See Pederson v. Time, Inc., supra at 16-17.
II. Commerce’s motion for summary judgment a. The Business Pursuits Exclusion
Commerce declares that the “business pursuits” exclusion in the Homeowners Policies relieves it of the duty to defend. As its purpose, homeowners insurance protects against risks involved with owning a home. Worcester Mutual Insurance Co. v. Marnell, 398 Mass. 240, 245 (1986); see Worcester Insurance Co. v. Fells Acres Day School, Inc., 408 Mass. 393, 412 (1990). In Fells Acres Day School, Inc., a large number of participants in a day care program brought negligence actions against the operators of the day care center. Two of the operators had homeowners insurance policies containing “business pursuits” exclusions similar to that in the instant case. The court explained that “(t]he alleged negligence of [the two operators] is in no way ‘associated with’ or ‘related to’ the home.” The court concluded that the insurers had no duty to defend because the allegations clearly involved a business undertaking by the insureds.
The present case, however, presents a far more convoluted set of factual allegations. In its supporting memorandum, Commerce assumes that the environmental contamination could only have come from the motorcycle shop operated on the property while Arnold Rubin was the owner. To the contrary, the underlying complaints against Arnold Rubin allege contamination from “hazardous wastes and/or oil.” The complaints also mention the storage of scrap metal on the site for as long as 60 years. In his deposition testimony, Arnold Rubin stated that a scrap iron business had been run on the property from the 1920s through the 1960s. The disputed facts indicate that the contamination could have come from the motorcycle shop or some other source not related to any business pursuits of the insured, Arnold Rubin. Therefore, the facts do not support resolution of this particular dispute at the summary judgment stage. See, e.g., Trustees of Tufts University v. Commercial Union Insurance Co., 415 Mass. 844 (1993).
b. Owned Property Exclusion
The Homeowners Policies also contained an exclusion for “property damage to property owned by the *683 insured.” In Trustees of Tufts University ev. Commercial Union Insurance Co., supra at 852, the Supreme Judicial Court recognized the “owned property exclusion” but denied application to the particular case due to insufficient facts. The court noted that “(t]he facts alleged in the complaint and those facts known by the insurers do not establish that Tufts owned the contaminated property.” Id. Other courts have similarly concluded that the duty to defend is based not only on the allegations in the complaint but also “on facts that are known or readily knowable by the insurer.” Desrosiers v. Royal Insurance Co. of America, 393 Mass. 37, 40 (1984); see Boston Symphony Orchestra, Inc. v. Commercial Union Insurance Co., 406 Mass. 7, 10-11 (1989); Camp Dresser & McKee v. Home Insurance Co., supra at 322.
In their supporting memorandum, Plaintiffs correctly assert that the language of the complaints fails to definitively identify Arnold Rubin as the “owner” of the contaminated premises during the policy period.[5] In his deposition testimony, however, Arnold Rubin admitted to owning the premises conveyed to Boyle between 1978 and 1982. The rule cited above allows an insurer to go beyond the complaint and also consider “known or readily knowable” facts. See Trustees of Tufts University v. Commercial Union Insurance Co., supra at 852. Therefore, Commerce justifiably denied its duty to defend Arnold Rubin through application of the “owned property exclusion.”
ORDER
For the foregoing reasons, it is hereby ORDERED that General Accident’s motion for summary judgment on Counts I, II, III and IV is ALLOWED. It is further ORDBRED that Commerce’s motion for summaryjudgment on Counts I, II, III and IV is ALLOWED and Plaintiffs’ cross-motion for summaryjudgment is DENIED.

In pertinent part, the policies provided as follows:
This insurance does not apply . . .
(1) to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
(a) at or from premises owned, rented or occupied by the named insured; (b) at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste; (c) which are at any time transported, handled, stored, treated, disposed of or processed as waste by or for the named insured or any person or organization for whom the named insured may be legally responsible; or . . .
(2) to any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.
Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
(Emphasis omitted)

At one point in their supporting memorandum Plaintiffs state that the potential “sudden and accidental” nature of any contamination creates a material issue of fact. This argument, however, disregards the policy language which abrogates the distinction between sudden and accidental pollution and all other types of pollution. The policy, in effect, excluded coverage for any variety of pollution.

Both complaints state: “upon information and belief, the Defendants Arnold M. Rubin and Benjamin Rubin or members of their family have owned the premises and adjoining property for approximately 60 years.”