# United States Court of Appeals
## For the First Circuit

No. 07-2762

NEW FED MORTGAGE CORPORATION,

Plaintiff, Appellant,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin, Circuit Judge,
and Schwarzer,[*] District Judge.

Robert S. Wolfe with whom Robert Wolfe Associates, P.C. was on brief for appellant.
John P. Connelly with whom Robert A. McCall and Peabody & Arnold LLP were on brief for appellee.

September 30, 2008

---

[*] Of the Northern District of California, sitting by designation.

**LYNCH**, **Chief Judge**.  This case involves the use of false credit information that is material to the risk of home mortgage lending transactions.

New Fed Mortgage Corporation, a mortgage originator, sued its insurer, National Union Fire Insurance Company of Pittsburgh, PA, in 2007, alleging that National Union had wrongfully denied it coverage under an errors and omissions ("E & O") policy.  On cross motions, the district court granted National Union's motion for summary judgment because it found that New Fed's claim fell within an exclusion in the policy.  The district court later denied New Fed's motion to alter or amend the judgment.  We affirm, albeit on grounds of a different policy exclusion.

## I.

In reciting the facts, we draw all reasonable inferences in New Fed's favor, as we must on summary judgment.  Mellen v. Trs. of Boston Univ., 504 F.3d 21, 24 (1st Cir. 2007).

New Fed is a residential mortgage originator and broker. It receives mortgage applications from prospective borrowers and presents those applications to lenders for approval.  If a lender approves a mortgage, it pays New Fed a fee for arranging the loan. New Fed makes its profit on the spread between its costs in the processing, selling, and funding of the loan and the amount realized when the loan is sold to an investor.

As part of its services, New Fed provides lenders with information regarding the mortgage applications it receives, including the prospective borrower's credit report obtained from an independent credit bureau. Lenders use the borrower's credit history, among other factors, to assess the value and terms of a particular mortgage. They give greater value and better terms to a mortgage as the likelihood increases that the borrower will repay it. If a lender approves a mortgage believing the borrower's credit history to be stronger than it is, the lender may well suffer a loss because the loan's terms do not reflect the lender's risk. Moreover, lenders often resell various interests in the mortgages they own to other financial institutions. The consequence of this reselling is that the loss incurred from a mortgage obtained on the basis of an inaccurate credit report can be far reaching.

Kevin Dunn worked under contract as a mortgage broker for New Fed starting in June 2005. New Fed's mortgage brokers assist prospective borrowers in completing their mortgage applications. They gather information regarding the applicant's financial history and explain to each applicant the terms of the proposed loan. New Fed paid Dunn on commission and only upon the closing of the loan, giving him incentive to have third party lenders approve the loans he prepared. The record indicates that Dunn, while working for New Fed, falsified the credit reports he had received from the

independent credit bureau in several of the mortgage applications he processed by assigning higher credit scores to the prospective borrowers.[1]

Decision One Mortgage Company, LLC -- now defunct -- was a mortgage lender. In November 2003, it entered into an agreement to use New Fed's services to receive mortgage applications, including credit data. New Fed's brokerage agreement with Decision One provided that New Fed "warrant[ed] the accurateness and the truthfulness of all information, credit or otherwise," it submitted to Decision One. New Fed also agreed to indemnify Decision One for the losses that "may be incurred by Decision One arising out of . . . any breach" by New Fed of any warranty under the contract.

Between January and April 2006, Decision One approved fifteen mortgages from New Fed in which Dunn had altered the credit reports. In April 2006, Decision One through the course of an internal audit noticed discrepancies between the credit reports it had independently obtained and those New Fed had provided for the fifteen mortgages. On April 20, 2006, Decision One notified New Fed of the problem.

New Fed investigated the matter. New Fed discovered that Dunn had prepared all fifteen mortgage applications but was unable to determine exactly how Dunn had altered the applicants' credit

---

[1]    New Fed asserts that lenders obtain their own independent credit reports before approving a mortgage.

scores. New Fed considered it most likely that the original credit reports sent by email to Dunn from the credit bureau had been scanned into an outside computer system, altered, and published in altered form. The altered reports were then substituted for the original credit reports in the loan package submitted to Decision One. Dunn denied altering the credit reports to New Fed's investigators. Following the conclusion of New Fed's investigation, Dunn resigned.

Decision One resold four of the fifteen mortgages to a third party for a total price of $1,034,150. After Decision One discovered that New Fed had falsified the credit reports, the third party investor who had purchased four of the mortgages from Decision One required Decision One to repurchase each mortgage at its original price.

On August 24, 2006, Decision One orally requested indemnification from New Fed for the losses that it would incur through the repurchase and resale of those four loans. New Fed asked that Decision One make its demand in writing. On October 2, 2006, Decision One sent New Fed a demand letter, alleging that Decision One had suffered "substantial losses" relating to those four mortgages "[a]s a result of the fraudulent information included in the loan packages submitted by New Fed." The letter requested that New Fed either purchase the four mortgages at their original price or compensate Decision One for the losses it would

-5-

realize when selling the mortgages at auction. New Fed responded but did not offer to compensate Decision One.

Decision One eventually sold the four loans together at auction. On February 15, 2007, Decision One requested that New Fed pay it $233,052.75, the total loss incurred in the repurchase and resale of the four loans.

At all relevant times, New Fed carried E & O coverage through National Union. "An errors and omissions policy is intended to insure a member of a designated calling against liability arising out of the mistakes inherent in the practice of that particular profession or business." Massamont Ins. Agency, Inc. v. Utica Mut. Ins. Co., 489 F.3d 71, 74 (1st Cir. 2007). Under the policy, National Union agreed "[t]o pay on behalf of the Insured . . . Damages resulting from any Claim(s) . . . for any Wrongful Act of the Insured." But the policy excluded from coverage "any Claim . . . alleging fraud, dishonesty, or criminal acts or omissions on the part of the Insured."

On June 28, 2006, New Fed sent National Union a notice of potential claim and advised it that Decision One had discovered "irregularities" in the credit reports for fifteen mortgage applications. National Union acknowledged the receipt of New Fed's claim notice and assigned the case to a claim examiner on September 1, 2006. On October 12, 2006, New Fed notified National Union of the pending repurchase of the four loans by Decision One. On

November 3, 2006, New Fed asked National Union to decide if it would provide coverage and a defense under the E & O policy. New Fed filed a sworn proof of loss statement under the E & O policy on November 17, 2006. New Fed included a copy of Decision One's October 2 demand letter with its proof of loss statement. By December 28, 2006, National Union had refused to cover New Fed under the E & O policy because it found that Decision One's claim against New Fed involved employee dishonesty.

## II.

New Fed brought a diversity action in the District of Massachusetts to compel National Union to provide coverage and defense costs under the E & O policy. The parties filed cross motions for summary judgment. The district court granted summary judgment to National Union, relying sua sponte on a rationale not advanced by the insurer. New Fed filed a timely appeal to this court.

## III.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's grant of summary judgment de novo and "may affirm the district court's decision on any grounds supported by the record." Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir. 2008) (quoting Estades-Negroni v. Assocs. Corp. of N.

<u>Am.</u>, 377 F.3d 58, 62 (1st Cir. 2004)). Here, no dispute of material fact exists. Massachusetts law governs New Fed's claims against National Union. The interpretation of an insurance contract under Massachusetts law is a question of law. <u>Allmerica Fin. Corp.</u> v. <u>Certain Underwriters at Lloyd's, London</u>, 871 N.E.2d 418, 425 (Mass. 2007).

The insured has the initial burden of proving that a loss falls within the policy's description of covered risks. <u>Markline Co.</u> v. <u>Travelers Ins. Co.</u>, 424 N.E.2d 464, 465 (Mass. 1981). It is the insurer's burden to show the applicability of a particular exclusion. <u>Hanover Ins. Co.</u> v. <u>Talhouni</u>, 604 N.E.2d 689, 692 (Mass. 1992). We need only address the applicability of the E & O policy's fraud and dishonesty exclusion.

We give the terms of New Fed's E & O policy their "fair and reasonable meaning." <u>Cody</u> v. <u>Conn. Gen. Life Ins. Co.</u>, 439 N.E.2d 234, 237 (Mass. 1982) (quoting <u>MacArthur</u> v. <u>Mass. Hosp. Serv., Inc.</u>, 180 N.E.2d 449, 450 (Mass. 1962)). "A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms." <u>Id.</u> (quoting <u>Hyfer</u> v. <u>Met. Life Ins. Co.</u>, 61 N.E.2d 3, 5 (Mass. 1945)). Here, the E & O policy excludes from coverage "any Claim . . . alleging fraud, dishonesty, or criminal acts or omissions . . . on the part of the Insured." The policy defines "Insured" to include both New Fed and any employee or independent

contractor.  Thus, Dunn's actions could fall within this policy exclusion.

Whether the policy provides coverage is determined by comparing the allegations of the underlying claim -- here, Decision One's October 2 demand letter -- with the policy provisions.  Med. Records Assocs., Inc. v. Am. Empire Surplus Lines Ins. Co., 142 F.3d 512, 514 (1st Cir. 1998) (citing Sterilite Corp. v. Cont'l Cas. Co., 458 N.E.2d 338, 340 (Mass. App. Ct. 1983)).  Decision One's demand letter alleges that New Fed submitted "fraudulent information" in four mortgage applications.  The letter stated: "[T]he credit reports for the [prospective borrowers], which were obtained by New Fed and submitted to Decision One in support of the loan applications, were altered to reflect higher credit scores than those scores actually provided to New Fed by the credit bureau."  Decision One's allegations place New Fed's conduct squarely within the E & O policy's[2] fraud and dishonesty exclusion, and New Fed is not entitled to indemnification.

---

[2]     An E & O policy may be contrasted with a fidelity bond. "Fidelity bonds are a sort of 'honesty insurance,' insuring against employee dishonesty. . . . Although often referred to as insurance, it is not liability insurance, but rather a two-party indemnity agreement through which the insurer reimburses the insured for losses actually suffered in accordance with the contract provisions."  FDIC v. Ins. Co. of N. Am., 105 F.3d 778, 785 (1st Cir. 1997).
        New Fed had fidelity bond coverage through National Union, but National Union denied New Fed's claim under the bond. New Fed has not pursued its claim under the bond here.

New Fed has also argued that under Massachusetts law, an insurer may not deny indemnity coverage because of the insured's fraud or dishonesty without a showing that the insured intended to harm the injured party. But New Fed has cited no authority to support this proposition, and we find no legal basis for it. We add that even if there were an "intent to harm" requirement, it would likely be satisfied here. The employee, whose actions are imputed to the insured employer, had to know that a false credit report was likely to lead to overpayment and loss.

We turn to the issue of New Fed's claim for defense costs under the E & O policy. An insurer's duty to defend is broader than its duty to indemnify under Massachusetts law. Dryden Oil Co. of New Eng. v. Travelers Indem. Co., 91 F.3d 278, 282 (1st Cir. 1996). "The reason [for this disparity] is that an insurer's obligation to defend is measured by the allegations of the underlying complaint while the duty to indemnify is determined by the facts, which are usually established at trial." Travelers Ins. Co. v. Waltham Indus. Labs. Corp., 883 F.2d 1092, 1099 (1st Cir. 1989). An insurer has a duty to defend where the third party's allegations against the insured are "'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms." Liberty Mut. Ins. Co. v. SCA Servs., Inc., 588 N.E.2d 1346, 1347 (Mass. 1992) (quoting Cont'l Cas. Co. v. Gilbane Bldg. Co., 461 N.E.2d 209, 212 (Mass. 1984)). But where the third

party's allegations against the insured "lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant." Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 531 (Mass. 2003) (quoting Timpson v. Transamerica Ins. Co., 669 N.E.2d 1092, 1095 (Mass. App. Ct. 1996)). Here, National Union has no duty to defend because Decision One alleged misconduct by New Fed that is plainly excluded from coverage.

The district court's decision rested on an unrelated policy exclusion, which we need not consider here.

IV.

The district court's grant of summary judgment to National Union is affirmed.