**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 11-1148

CALIXTO COLÓN-RIVERA; JUAN SÁNCHEZ; JORGE PLARD;
ADALBERTO AVILÉS; NOEMÍ VALENTÍN

Plaintiffs, Appellants,

v.

ASOCIACIÓN DE SUSCRIPCIÓN CONJUNTA DEL SEGURO DE
RESPONSABILIDAD OBLIGATORIO,

Defendant, Appellee,

ATTORNEY GENERAL OF THE COMMONWEALTH OF PUERTO RICO,

Intervenor.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Thompson, Circuit Judges.

A.J. Amadeo Murga for appellants.
Carlos Lugo-Fiol, with whom Luis R. Román-Negrón, Acting
Solicitor General, Irene S. Soroeta-Kodesh, Solicitor General,
Leticia Casalduc-Rabell, Deputy Solicitor General, and Zaira Z.
Girón-Anadón, Deputy Solicitor General, were on brief, for
Intervenor Attorney General of Puerto Rico.
Verónica Ferraiuoli-Hornedo, with whom Nigaglioni and
Ferraiuoli was on brief, for appellee.

December 13, 2011

**LYNCH**, **Chief Judge**.  A group of privately-insured motor vehicle owners have sued the Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio ("JUA") under 42 U.S.C. § 1983, seeking as relief only damages for alleged violations of their constitutional rights under the Takings and Due Process Clauses.  In light of this court's decision in García-Rubiera v. Fortuño, No. 10-2507, 2011 WL 6004615 (1st Cir. Dec. 2, 2011), in which plaintiffs raised similar claims against officials of the Commonwealth of Puerto Rico, we direct entry of judgment for defendant.

The underlying facts are described in our decision in García-Rubiera, 2011 WL 6004615.  We summarize those facts here.

In 1995, Puerto Rico passed Law 253, which requires all motor vehicles traveling on public roads to obtain compulsory liability insurance.  P.R. Laws Ann. tit. 26, § 8051 et seq. Pursuant to Law 253, the owners of such vehicles are required to: (1) either pay premiums (of $99 for private or $148 for commercial vehicles) to the Commonwealth at the time they acquire, and each subsequent year when they renew, their vehicle registration, id. § 8053(a), or (2) opt-out of the Commonwealth's insurance plan by purchasing private insurance with comparable or better liability coverage, id. § 8061(a).

Law 253 also created JUA to administer the Commonwealth's insurance plan.  Id. § 8055.  JUA is composed of and operated by

-3-

Puerto Rico's largest private insurance companies, and exists to insure vehicle owners who participate in the Commonwealth's insurance plan. Id. § 8055(a), (b). It has responsibility for insuring Puerto Rico's "high-risk" drivers, who cannot obtain insurance through private insurers, but who are nonetheless required to obtain compulsory insurance under Law 253. Id. § 8055(b).

JUA's funding comes from the compulsory premiums paid to the Commonwealth by vehicle owners every year when they renew their vehicle registrations. The Commonwealth periodically remits these premium payments to JUA, which then distributes the funds among its member companies. Id. § 8055(c), (e), amended by Act 201 of Dec. 29, 2009, art. 4.

The Commonwealth's insurance option provides only minimal coverage to vehicle owners; thus, many drivers obtain private liability insurance for more complete coverage. Id. § 8052(j), amended by Act 201 of Dec. 29, 2009, art. 2. Under Law 253, drivers who obtain a specified amount of private insurance are not required to pay for state insurance on top of their private insurance and may opt out of the state insurance program. Id. § 8061. Although Puerto Rico's Insurance Commissioner has enacted various procedures over the years designed to help these privately-insured vehicle owners opt out of the state insurance program, these procedures have been under-utilized, and a

substantial percentage of privately-insured vehicle owners ("insureds") have been required to pay for both state and private insurance.

When an insured is required to pay for state insurance on top of his or her private insurance, he or she is entitled to full reimbursement of the state purchase price. However, for a variety of reasons described more fully in García-Rubiera, 2011 WL 6004615, many insureds -- in some years, a majority of insureds -- are not reimbursed for their duplicate premiums. As a consequence, their duplicate payments remain, initially, in the custody of JUA.

At the heart of plaintiffs' claims is Puerto Rico's Law 230. In 2002, Puerto Rico enacted Law 230, which directs JUA to transfer all the accumulated unreimbursed premium payments -- as of December 31, 2001, a sum of approximately $73 million -- to Puerto Rico's Secretary of the Treasury, and, thereafter, to repeat this transfer of funds every two years. Act No. 230 of Sept. 11, 2002, § 2 (codified at P.R. Laws Ann. tit. 26, § 8055(*l*)); see also id. Statement of Motives ("[D]uring the existence of [JUA], certain funds have been accumulated to it that do not belong to it. . . . [I]t is of greater benefit to the public interest in general to immediately transfer those funds to the . . . custody of the Department of the Treasury."). Law 230 also requires the Secretary of the Treasury to hold the transferred premiums "as trustee" for five years, and to establish a claims process for refunding the

premiums to insureds.  P.R. Laws Ann. tit. 26, § 8055(*l*).  After five years any remaining unreimbursed funds escheat to the Commonwealth.  Id.  Although the Secretary of the Treasury established a procedure for reimbursement, relatively few insureds have successfully utilized this procedure, perhaps because, as we held in García-Rubiera, 2011 WL 6004615, the Secretary failed to give adequate notice of these procedures.[1]

Plaintiffs filed their complaint in this case on September 20, 2007, seeking legal and punitive damages under 42 U.S.C. § 1983, alleging that JUA violated their constitutional rights under the Takings and Due Process Clauses through conduct tantamount to state action.  Plaintiffs argue that by transferring the duplicate premium funds to the Secretary of the Treasury as required by Law 230 (alleged to be unconstitutional), JUA committed a taking and violated plaintiffs' substantive and procedural due process rights.  Plaintiffs additionally argue that JUA violated its duty under Puerto Rico law to distribute the funds directly to individual insureds.[2]

---

[1]  As of 2010, the Secretary of the Treasury had reimbursed a total of $9 million worth of duplicate premiums, a small fraction of the total sum of premium payments it has received from JUA, which, as of the last accounting in 2009, totaled $157 million. The Secretary has used the difference to supplement the Commonwealth's general budget.

[2]  The convoluted history of this case is set forth below. In response to plaintiffs' complaint, JUA filed a motion to dismiss, which the district court initially granted, finding that plaintiffs' action (1) was not ripe under the Supreme Court's

What is at issue here is the district court's grant of defendant's motion for summary judgment as to all of plaintiffs' federal law claims, its denial of plaintiffs' motion for summary judgment, and its dismissal of plaintiffs' Puerto Rico law claims without prejudice. Colón-Rivera v. Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio, No. 07-1875, 2010 WL 5376116 (D.P.R. Dec. 27, 2010). The district court held that although plaintiffs had demonstrated a property interest in their duplicate payments, plaintiffs did not suffer any deprivation of that interest as a result of Law 230 and its companion regulations. Therefore, the court concluded, JUA's actions pursuant to those laws could not violate plaintiffs' constitutional rights under the Takings or Due Process Clauses. The court did not reach the question of whether JUA's actions constituted state action for purposes of plaintiffs' constitutional claims.

decision in Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 194-95 (1985), and (2) was time barred under Puerto Rico's statute of limitations for tort actions. Colón-Rivera v. Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio, 594 F. Supp. 2d 169 (D.P.R. 2008).

On a motion for reconsideration, the district court found that there was an intervening change in the law with this court's earlier decision in García-Rubiera v. Calderón, 570 F.3d 443 (1st Cir. 2009), as well as an error of fact regarding the time bar. Colón-Rivera v. Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio, 665 F. Supp. 2d 88, 91-92 (D.P.R. 2009). The district court accordingly vacated its earlier order and held that plaintiffs' takings claim was ripe, id. at 93, and that plaintiffs' claims were not time barred, id. at 93-95.

In García-Rubiera, 2011 WL 6004615, we held that insureds "have a sufficient property interest in the duplicate premiums," id. at *6 (citing García-Rubiera v. Calderón, 570 F.3d 443, 455 (1st Cir. 2009)), that Law 230 and its companion regulations effect a deprivation of insureds' property for purposes of procedural due process, id. at *7, and that the Commonwealth had violated the minimum notice requirements of the Due Process Clause, id. at *13. We remanded to the district court for entry of a declaratory judgment and injunctive relief as to plaintiffs' notice claim. Id. at *16. In addition, we rejected plaintiffs' takings and substantive due process claims against the Commonwealth, as well as plaintiffs' claim that Procedure 96 was so burdensome as to violate their rights under procedural due process. Id.

We may affirm the district court's grant of summary judgment on any grounds apparent from the record. New Fed Mortg. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 543 F.3d 7, 11 (1st Cir. 2008). Plaintiffs raise substantially the same claims against JUA as were raised against the Commonwealth in García-Rubiera. We reject plaintiffs' takings, substantive due process, and burdensomeness claims for the same reasons we rejected those claims in that case. See García-Rubiera, 2011 WL 6004615, at *14-15 (holding that plaintiffs failed to articulate proper takings claim and that substantive due process and burdensomeness claims failed on the merits).

To the extent plaintiffs make a procedural due process notice argument against JUA (and it is not clear that they do), the injunctive relief ordered by this court in García-Rubiera, 2011 WL 6004615, will address future problems. However, here, plaintiffs seek damages, not injunctive relief. Plaintiffs are not entitled to the damages relief they have requested for a number of reasons.

Plaintiffs argue that "Law 230 compels JUA to transfer the duplicate payments" to the Commonwealth, and that the transfers thus "are fairly attributable to the state." (Emphasis added). Plaintiffs' constitutional claims -- that the transfer of funds from JUA to the Commonwealth was a taking, violated procedural due process, and was irrational for substantive due process purposes -- are claims against the Commonwealth. The damages relief plaintiffs seek is for the Commonwealth's alleged constitutional violations in enacting Law 230; all that JUA did was comply with a state law, as it was required to do.[3]

The Eleventh Amendment bars claims against the state or state officers acting in their official capacities except to the extent that plaintiffs seek prospective injunctive relief. Edelman v. Jordan, 415 U.S. 651, 677 (1974). Plaintiffs may not circumvent this constitutional bar by seeking damages from JUA instead of from the Commonwealth.

_____

[3] There was and could be no allegation that JUA was conspiring with the Commonwealth since it was merely doing what Law 230 required.

-9-

Accordingly, we affirm entry of judgment for defendant, albeit on different grounds than those utilized by the district court, as well as the dismissal without prejudice of the Puerto Rico law claims.

So ordered.